## In re ASBESTOS PRODUCTS LIABILITY LITIGATION (NO. VI).

### MDL No. 875.

Judicial Panel on
Multidistrict Litigation.

July 29, 1991.

---

Before JOHN F. NANGLE, Chairman, S. HUGH DILLIN,* MILTON POLLACK,* LOUIS H. POLLAK, HALBERT O. WOODWARD, ROBERT R. MERHIGE, Jr., and WILLIAM B. ENRIGHT, Judges of the Panel.

---

* Judges Dillin and Pollack did not participate in the decision of this matter.

1. It appears that the only districts with pending asbestos actions that did not effect service of the Panel's order are the Eastern District of Wisconsin and the District of Rhode Island. In view of the Panel's disposition of this docket, the actions pending there will be treated as potential tagalong actions in accordance with the Panel's Rules. *See* Rules 12 and 13, R.P.J.P.M.L., 120 F.R.D. 251, 258–59 (1988).

## OPINION AND ORDER

Judge NANGLE, Chairman, Delivered the Opinion of the Panel, in Which Judges POLLAK, WOODWARD, MERHIGE and ENRIGHT joined.

On January 17, 1991, the Panel issued an order to show cause why all pending federal district court actions not then in trial involving allegations of personal injury or wrongful death caused by asbestos should not be centralized in a single forum under 28 U.S.C. § 1407. Because of the difficulty in serving this order on the enormous number of parties in this docket, the Panel relied on the clerks of all district courts to serve the parties to actions in their respective districts.[1] As a result, the parties to the 26,639 actions pending in 87 federal districts and listed on the following Schedule A are subject to the Panel's order.[2] [Editor's Note: All but the Summary of Schedule A has been omitted from publication by the Court.] More than 180 pleadings have been filed in response to the Panel's order, and a four hour hearing on the question of transfer was held on May 30, 1991 in New York City, at which time 37 counsel presented oral argument. In many instances the attorneys filing these pleadings or participating in oral argument were representing the views of large groups of parties.

Supporting transfer are plaintiffs in approximately 17,000 actions (including a core group of more than 14,000 plaintiffs represented by over 50 law firms) and 30 defendants (24 of which are named in more than 20,000 actions). Opposing transfer are plaintiffs in at least 5,200 actions and 454 defendants. The positions of those parties that have expressed a preference with re-

---

2. The Statistical Division of the Administrative Office of the United States Courts reports that as of March 31, 1991, nearly 31,000 actions were pending in federal districts. Based on Panel communications with courts throughout the country, the approximately 4,000 pending actions not embraced by the present order likely include actions that, as of January 17, 1991, were overlooked, in trial or already at least partially tried but not yet statistically closed because, *inter alia,* claims against one or more defendants were stayed under the Bankruptcy Code.

spect to transferee district are varied. Many parties suggest centralization in what amounts to their home forum. The Eastern District of Pennsylvania is the district either expressly favored or not objected to in the greatest number of pleadings. The Eastern District of Texas, which is the choice of the aforementioned core group of 14,000 plaintiffs, is also the district that has generated the most opposition from defendants. Other suggested districts that go beyond the home forum approach are the District of the District of Columbia, the Eastern District of Louisiana, the Northern District of Ohio, and the Eastern District of New York. Some parties' forum recommendations are expressed in the form of a suggested individual transferee judge or transferee judge structure.

On the basis of the papers filed and the hearing held, the Panel finds that the actions in this litigation involve common questions of fact relating to injuries or wrongful death allegedly caused by exposure to asbestos or asbestos containing products, and that centralization under § 1407 in the Eastern District of Pennsylvania will best serve the convenience of the parties and witnesses and promote the just and efficient conduct of this litigation.

## DISCUSSION

Any discussion of § 1407 transfer in this docket must begin with the recognition that the question does not arise in a vacuum. Indeed, the impetus for the Panel's order to show cause was a November 21, 1990 letter signed by eight federal district judges responsible for many asbestos actions in their respective districts.[3] These judges, citing the serious problem that asbestos personal injury litigation continues to be for the federal judiciary, requested that the Panel act on its own initiative to address the question of § 1407 transfer. Furthermore, as the title of this docket suggests, this is the sixth time that the Panel has considered transfer of asbestos litigation. On the five previous occasions (1977, 1980, 1985, 1986 and 1987) that the Panel considered the question, it denied transfer in each instance.[4]

The Panel's constancy is not as dramatic as a mere recitation of the denials might suggest, however. The 1986 and 1987 dockets considered by the Panel involved only five and two actions, respectively. The 1985 Panel decision pertained not to personal injury/wrongful death asbestos actions but rather to property damage claims of school districts that incurred significant costs in removing asbestos products from school buildings. The denial in the 1980 Panel docket was based almost exclusively on the movants' failure to offer any distinctions that would warrant a disposition different from the Panel's first asbestos decision in 1977.

It is only in the 1977 decision, pertaining to 103 actions in nineteen districts, that the Panel offered any detailed analysis of its asbestos litigation reasoning with respect to asbestos personal injury/wrongful death actions. In that decision, the Panel first listed the primary arguments of the responding parties that unanimously opposed transfer: advanced stage of proceedings in many of the actions; use of voluntary coordinating arrangements in several districts; lack of commonality among defendants and plaintiffs; circumstances of exposure predominantly unique to each action; individual questions of causation in each action; predominantly individual questions of the liability of each defendant in each action;

---

**3.** The signatories to this letter are Judges Walter J. Gex, III (S.D.Miss.), Thomas D. Lambros (N.D.Ohio), Alan H. Nevas (D.Conn.), Richard A. Schell (E.D.Tx.), Charles Schwartz, Jr. (E.D.La.), Charles R. Weiner (E.D.Pa.), Charles R. Wolle (S.D.Iowa) and Rya W. Zobel (D.Mass.). Additionally, Judge Jack B. Weinstein (E.D.N.Y.) has contacted the Panel staff and requested that he also be considered a signatory to the letter.

**4.** *In re Asbestos and Asbestos Insulation Material Products Liability Litigation,* 431 F.Supp. 906 (J.P.M.L.1977); *In re Asbestos Products Liability Litigation (No. II),* MDL–416 (J.P.M.L. March 13, 1980) (unpublished order); *In re Asbestos School Products Liability Litigation,* 606 F.Supp. 713 (J.P.M.L.1985); *In re Ship Asbestos Products Liability Litigation,* MDL–676 (J.P.M.L. Feb. 4, 1986) (unpublished order); and *In re Leon Blair Asbestos Products Liability Litigation,* MDL–702 (J.P.M.L. Feb. 6, 1987) (unpublished order).

local issues predominating in the discovery process; absence of possibility of inconsistent or overlapping class certifications; and the readily discernible nature of the principal area common to all actions, the state of medical and scientific knowledge at a particular time regarding the health hazards posed by exposure to asbestos.

In denying transfer in the 1977 decision, the Panel recognized the existence of some common questions of fact among the actions. For in that docket, as in the matter currently before the Panel, all actions contained allegations of personal injury or death as a result of exposure to asbestos or asbestos containing products. The Panel nevertheless held that the other criteria for § 1407 transfer were not satisfied. In relevant part, the Panel stated:

Many factual questions unique to each action or to a group of actions already pending in a single district clearly predominate, and therefore transfer is unwarranted.... Furthermore, many of these actions already are well advanced. Some of the actions have been pending for up to four years, and trial dates or discovery cutoff dates have been set in several actions. Under these circumstances, transfer would not further the purposes of Section 1407.

*In re Asbestos and Asbestos Insulation Material Products Liability Litigation*, 431 F.Supp. 906, 910 (J.P.M.L.1977).

Many of the parties presently opposing transfer in this docket rely on the facts and reasoning of the Panel's 1977 transfer decision. They insist that the situation that warranted denial then not only still prevails but has been magnified by the greatly increased number of actions and parties in federal asbestos personal injury/wrongful death litigation—more than 30,000 pending federal actions now, as opposed to the 103 actions subject to the Panel's 1977 decision. In our view, it is precisely this change that now leads us to conclude that centralization of all federal asbestos personal injury/wrongful death actions, in the words of 28 U.S.C. § 1407(a), "will be for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions." In short, we are persuaded that this litigation has reached a magnitude, not contemplated in the record before us in 1977, that threatens the administration of justice and that requires a new, streamlined approach.

The Panel is not the first to reach such a conclusion. Just this past March 1991, the Judicial Conference Ad Hoc Committee on Asbestos Litigation, whose members were appointed by Chief Justice William H. Rehnquist, stated as follows:

The committee has struggled with the problems confronting the courts of this nation arising from death and disease attributable to airborne asbestos industrial materials and products. The committee has concluded that the situation has reached critical dimensions and is getting worse. What has been a frustrating problem is becoming a disaster of major proportions to both the victims and the producers of asbestos products, which the courts are ill-equipped to meet effectively.

After extensive study, the Institute for Civil Justice of the Rand Corporation in 1985 observed, with respect to how the civil justice system handles asbestos claims, that—

The picture is not a pretty one. Decisions concerning thousands of deaths, millions of injuries, and billions of dollars are entangled in a litigation system whose strengths have increasingly been overshadowed by its weaknesses.

The ensuing five years have seen the picture worsen: increased filings, larger backlogs, higher costs, more bankruptcies and poorer prospects that judgments—if ever obtained—can be collected.

It is a tale of danger known in the 1930s, exposure inflicted upon millions of Americans in the 1940s and 1950s, injuries that began to take their toll in the 1960s, and a flood of lawsuits beginning in the 1970s. On the basis of past and current filing data, and because of a latency period that may last as long as 40 years for some asbestos related dis-

eases, a continuing stream of claims can be expected. The final toll of asbestos related injuries is unknown. Predictions have been made of 200,000 asbestos disease deaths before the year 2000 and as many as 265,000 by the year 2015.

The most objectionable aspects of asbestos litigation can be briefly summarized: dockets in both federal and state courts continue to grow; long delays are routine; trials are too long; the same issues are litigated over and over; transaction costs exceed the victims' recovery by nearly two to one; exhaustion of assets threatens and distorts the process; and future claimants may lose altogether.

*Report of The Judicial Conference Ad Hoc Committee on Asbestos Litigation*, 1–3 (1991) (footnote omitted) (hereinafter *Asbestos Committee Report*). The Committee pointed out that presently in the federal system nearly two new asbestos actions are being filed for every action terminated, and that at the current rate, there will be more than 48,000 actions pending in the federal courts at the end of three years. *Asbestos Committee Report, supra,* at 8.

The Committee also discussed the ongoing change in the demographics of asbestos litigation in the federal courts:

In 1984, when the Federal Judicial Center held its first asbestos conference, asbestos litigation in the federal courts was largely concentrated in only four district courts. Since that time, however, asbestos cases have infiltrated virtually every federal district. Asbestos litigation must therefore be viewed as a national problem rather than merely a local or regional one, especially with the number of Americans affected.

*Asbestos Committee Report, supra,* at 9 (footnote omitted).

Conclusions similar to those of the Judicial Conference Asbestos Committee have also been reached by judges actively involved in asbestos litigation. In perhaps the most recent comprehensive review of asbestos litigation, Judge Jack B. Weinstein (E.D.N.Y.) observed:

The large number of asbestos lawsuits pending throughout the country threatens to overwhelm the courts and deprive all litigants, in asbestos suits as well as other civil cases, of meaningful resolution of their claims.... Several commentators have recounted the inefficiencies and inequities of case-by-case adjudication in the context of mass tort disasters. *See, e.g.,* Rosenberg, *Class Actions for Mass Torts: Doing Individual Justice by Collective Means,* 62 Ind.L.J. 561 (1987); *Trends in Asbestos Litigation* (Federal Judicial Center 1987); Rubin, *Mass Torts and Litigation Disasters,* 20 Ga.L.Rev. 429 (1986); Note, *Class Certification in Mass Accident Cases Under Rule 23(b)(1),* 96 Harv.L.Rev. 1143 (1983); Comment, *Federal Mass Tort Class Actions: A Step Toward Equity and Efficiency,* 47 Alb.L.Rev. 1180 (1983).

The heyday of individual adjudication of asbestos mass tort lawsuits has long passed. *See* [*Asbestos Committee Report*], *supra,* at 7 ("one point on which plaintiffs' counsel, defense counsel and the judiciary can agree is that the present way in which we have attempted to resolve asbestos cases has failed"). The reasons are obvious: the complexity of asbestos cases makes them expensive to litigate; costs are exacerbated when each individual has to prove his or her claim *de novo;* high transaction costs reduce the recovery available to successful plaintiffs; and the sheer number of asbestos cases pending nationwide threatens to deny justice and compensation to many deserving claimants if each claim is handled individually. The backlog is eroding a fundamental aspiration of our judicial system to provide equality of treatment for similarly situated persons. *Cf.* [*Asbestos in the Courts: The Challenge of Mass Toxic Torts* (RAND, Inst. of Social Justice 1985)], *supra,* at 12 (recent wave of asbestos litigation marked by high concentration of claims, dominance of characteristics of individual asbestos cases, behavior of parties, lawyers and the attributes of judges "created a situation in which dispositions are

slow, costs are high, and outcomes are variable").

Overhanging this massive failure of the present system is the reality that there is not enough money available from traditional defendants to pay for current and future claims. Even the most conservative estimates of future claims, if realistically estimated on the books of many present defendants, would lead to a declaration of insolvency—as in the case of some dozen manufacturers already in bankruptcy.

*In re Johns–Manville Corporation, et al.,* No. 90–3973, slip op. at 61–63, 1991 WL 86304 (E.D.N.Y. May 16, 1991).

Given the dimensions of the perceived problem in federal asbestos litigation, it is not surprising that no ready solution has emerged. The Judicial Conference Asbestos Committee concluded that the only true solution lies in Congressional legislation. Nevertheless, it stressed that "[a]t the same time, or failing congressional action, the federal judiciary must itself act now to achieve the best performance possible from the system under current law." *Asbestos Committee Report, supra,* at 4. The Committee also noted that the Panel's order to show cause was pending at the time of the issuance of the Committee's report. The Committee observed that "this committee, by its recommendations, does not intend to affect or restrict in any way the actions of the Panel under 28 U.S.C. § 1407 or reduce the Panel's jurisdiction or authority." *Id.* at 22.[5]

It is against this backdrop that the Panel's decision and role in this litigation must be understood. First of all, our decision to order transfer is not unmindful of the fact that the impact of asbestos litigation varies from district to district, and that in some courts asbestos personal injury actions are being resolved in a fashion indistinguishable from other civil actions. It is not surprising, therefore, that parties and courts involved in such actions might urge that inclusion of their actions in multidis-

trict proceedings is inappropriate. The Panel, however, must weigh the interests of all the plaintiffs and all the defendants, and must consider multiple litigation as a whole in the light of the purposes of the law. *In re Multidistrict Private Civil Treble Damage Litigation Involving Library Editions of Children's Books,* 297 F.Supp. 385, 386 (J.P.M.L.1968). It is this perspective that leads us to conclude that centralization in a single district of all pending federal personal injury and wrongful death asbestos actions is necessary.

Much of the argument presented to the Panel in response to its order to show cause is devoted to parties' differing (and often inconsistent) visions of § 1407 proceedings: 1) some plaintiffs see centralized pretrial proceedings as a vehicle leading to a single national class action trial or other types of consolidated trials on product defect, state of the art and punitive damages, while many defendants staunchly oppose such a trial, favor a reverse bifurcation procedure where actual damages and individual causation are tried before liability, and hope to use § 1407 proceedings to effect the severance of claims for punitive damages through a transferee court order directing that, upon the return of any case to its transferor district, such claims not be tried until claims for compensatory damages have been resolved in all federal cases; 2) some parties hope to persuade the transferee court to establish case deferral programs for plaintiffs who are not critically ill, or who have been exposed to asbestos but do not presently show any signs of impairment (i.e., pleural registries), while many plaintiffs assert that such procedures are unfair or unconstitutional; 3) in response to the pressing concern about transaction costs in this litigation, some defendants consider § 1407 transfer necessary in order to provide a single federal forum in which limits on plaintiffs' contingent fees can be addressed, while some plaintiffs maintain that transfer is necessary to pre-

---

5. The Committee also observed that, in the interest of centralizing asbestos claims to the greatest extent possible, the Panel's authority "could be expanded to allow the Panel to transfer actions for trial as well as for pretrial proceedings." *Asbestos Committee Report, supra,* at 31.

vent the depletion of defendants' limited insurance coverage by defense costs incurred in multiple districts; 4) some plaintiffs and defendants urge that transfer is necessary in order to develop through discovery proceedings nationwide product data bases on all asbestos products and corporate histories of all asbestos defendants, while other plaintiffs and defendants contend that such efforts would be of no utility and are simply designed to shift liability; 5) some plaintiffs are suggesting that defendants' finances are so fragile as to require limited fund class action determinations pursuant to Fed.R.Civ.P. 23(b)(1)(B), while other plaintiffs resist any attempt to restrict their right to pursue punitive damages; 6) some parties anticipate that a single transferee court would speed up case disposition and purge meritless claims, while others expect a system of spacing out claims so as not to overwhelm currently solvent defendants' cash flow and drive them into bankruptcy; and 7) some parties contend that a single transferee court is necessary for the purpose of exploring the opportunities for global settlements or alternative dispute resolution mechanisms, while other parties assert that such hopes are utopian at best as long as i)

more than twice as many asbestos cases remain pending in state courts as in federal courts, and ii) currently stayed claims against bankrupt defendants cannot be addressed by the transferee court.[6]

We enumerate these issues not for the purpose, as some parties seemingly misunderstand, of passing on their merits. The language of the first sentence of paragraph (b) of § 1407 is quite clear about the proper forum for resolution of such issues—"coordinated or consolidated pretrial proceedings shall be conducted by a judge or judges to whom such actions are assigned" by the Panel (emphasis added). The Panel has neither the power nor the disposition to direct the transferee court in the exercise of its powers and discretion in pretrial proceedings. *In re Plumbing Fixture Cases*, 298 F.Supp. 484, 489 (J.P.M.L.1968).

We cite these issues only as illustrations of 1) the types of pretrial matters that need to be addressed by a single transferee court in order to avoid duplication of effort (with concomitant unnecessary expenses) by the parties and witnesses, their counsel, and the judiciary, and in order to prevent inconsistent decisions;[7] and 2) why, at

---

6. There appears to be some confusion among the parties concerning the interaction of the provisions of the Bankruptcy Code and § 1407. Transfer under § 1407 of an action containing claims against a defendant in bankruptcy has no effect on the automatic stay provisions of the Bankruptcy Code (11 U.S.C. § 362). Claims that have been stayed in the transferor court remain stayed in the transferee court. The Panel, however, has never considered the pendency of such stayed claims in an action to be an impediment to transfer of the action. 28 U.S.C. § 1407(a) authorizes the Panel to transfer only "civil actions" and not claims. The complex multidistrict litigations before the Panel have often included actions brought against multiple defendants, the claims against one or more of which have been stayed as a result of bankruptcy. To have allowed the pendency of claims against a single bankrupt defendant to preclude the transfer of actions containing claims actively being litigated against common nonbankrupt defendants would have frustrated the essential purpose of § 1407.

Some parties have urged the Panel to treat the bankruptcy reorganizations themselves as "civil actions" appropriate for transfer under § 1407 to the transferee district. The reorganization

proceedings are not subject to our order to show cause, and this question is therefore not ripe for a Panel decision. We have not addressed this question before and would be reluctant to do so until: 1) the transferee court determines that other alternatives, such as coordination with the concerned bankruptcy courts, are insufficient to accomplish the goals of § 1407; and 2) other suggested means of transferring the bankruptcy reorganizations or relevant portions thereof have been fully explored by the transferee court and the concerned bankruptcy courts.

Finally, we note that to the extent that state court actions and bankruptcy proceedings are excluded from the ambit of the Panel's transfer decision, transfer will nonetheless have the salutary effect of creating one federal court with which such proceedings can be coordinated, to the extent deemed desirable by the concerned courts. Indeed, state court judges have communicated to the Panel that coordination among state courts and a single transferee court for the federal actions is an objective worthy of pursuit.

7. We note that to the extent any of these pretrial decisions are subject to appellate review pursuant to interlocutory appeal or writ of manda-

least initially, all pending federal personal injury or wrongful death asbestos actions not yet in trial must be included in § 1407 proceedings. For example, if, as some courts, parties and commentators have suggested, there are insufficient funds to fairly compensate all deserving claimants, this should be determined before plaintiffs in lightly impacted districts go to trial and secure recoveries (often including punitive damages) at the possible expense of deserving plaintiffs litigating in districts where speedy trial dates have not been available. Similarly, if there are economies to be achieved with respect to remaining national discovery, pretrial rulings or efforts at settlement, these should be secured before claims against distinct types or groups of defendants are separated out of the litigation. Finally, because many of the arguments of parties seeking exclusion from transfer are intertwined with the merits of their claims or defenses and affect the overall management of this litigation, we are unwilling, on the basis of the record presently before us, to carve out exceptions to transfer. We prefer instead to give the transferee court the opportunity to conduct a substantive review of such contentions and how they affect the whole proceedings.

It may well be that on further refinement of the issues and close scrutiny by the transferee court, some claims or actions can be remanded in advance of the other actions in the transferee district. Should the transferee court deem remand of any claims or actions appropriate, the transferee court can communicate this to the Panel, and the Panel will accomplish remand with a minimum of delay. *See* Rule 14, R.P.J.P.M.L., 120 F.R.D. 251, 259–61 (1988).[8] We add that for those parties urging that resolution of this litigation lies primarily in the setting of firm, credible

trial dates, § 1407 transfer may serve as a mechanism enabling the transferee court to develop a nationwide roster of senior district and other judges available to follow actions remanded back to heavily impacted districts, for trials in advance of when such districts' overburdened judges may have otherwise been able to schedule them.

We remain sensitive to the concerns of some parties that § 1407 transfer will be burdensome or inconvenient. We note that since § 1407 transfer is primarily for pretrial, there is usually no need for the parties and witnesses to travel to the transferee district for depositions or otherwise. *See, e.g.,* Fed.R.Civ.P. 45(d)(2). Furthermore, the judicious use of liaison counsel, lead counsel and steering committees will eliminate the need for most counsel ever to travel to the transferee district. *See Manual for Complex Litigation, Second,* § 20.22 (1985).[9] And it is most logical to assume that prudent counsel will combine their forces and apportion their workload in order to streamline the efforts of the parties and witnesses, their counsel, and the judiciary, thereby effectuating an overall savings of cost and a reduction of inconvenience to all concerned. *See In re Nissan Motor Corporation Antitrust Litigation,* 385 F.Supp. 1253, 1255 (J.P.M.L.1974). Hopefully, combining such practices with a uniform case management approach will, in fact, lead to sizeable reductions in transaction costs (and especially in attorneys' fees).

In a docket of this size and scope, no district emerges as the clear nexus where centralized pretrial proceedings should be conducted. The Panel has decided to centralize this litigation in the Eastern District of Pennsylvania before Judge Charles R. Weiner. We note that: 1) more asbestos personal injury or wrongful death actions

---

mus, § 1407 transfer will also help to minimize the potential for inconsistent decisions from courts of appeals.

**8.** Those parties who may seek early remand of their actions or claims are reminded of i) Panel Rule 14(d)'s expression of the Panel's reluctance to order remand absent a suggestion of remand from the transferee judge, and ii) the special affidavit requirement of that Rule. 120 F.R.D.

at 260. *See also In re Holiday Magic Securities and Antitrust Litigation,* 433 F.Supp. 1125, 1126 (J.P.M.L.1977).

**9.** Liaison counsel would be called upon by the Panel to distribute future Panel orders regarding tag-along actions and any other matters to their liaison group as contemplated in Panel Rule 8(e). R.P.J.P.M.L., *supra,* 120 F.R.D. at 255.

are pending in that district than any other; 2) the court there has extensive experience in complex litigation in general and asbestos litigation in particular; and 3) the court has graciously expressed its willingness to assume the responsibility for this massive undertaking. Furthermore, in the person of Judge Weiner the Panel finds a judge thoroughly familiar with the issues in asbestos litigation, a track record of accomplishment and successful innovation,[10] and, on the basis of the pleadings before the Panel in which an opinion was expressed, a selection to which the majority of responding plaintiffs and defendants either expressly agree or are not opposed.

Many parties have suggested that the dynamics of this litigation make it impractical, if not impossible, for one single judge to discharge the responsibilities of transferee judge, while other parties have emphasized that more than a single transferee judge would dilute the judicial control needed to effectively manage the litigation. Varying suggestions have been made that the Panel appoint additional transferee judges to handle specific issues (e.g., class or limited fund determinations, discovery, settlement, claims administration, etc.), to deal with separate types of claims or defendants (e.g., maritime asbestos actions, railroad worker actions, friction materials actions, tire workers actions, etc.), or to divide the litigation along regional or circuit lines (helping to insure uniformity of decisions within each circuit pertaining, *inter alia,* to state law questions involved in the actions). Each of these suggestions has merit, as long as one judge has the opportunity to maintain overall control.

Section 1407(b) contemplates that multidistrict litigation may be conducted by "a judge or judges." It further expressly provides that "upon request of the panel, a circuit judge or a district judge may be designated and assigned temporarily for service in the transferee district by the Chief Justice of the United States or the chief judge of the circuit, as may be required, in accordance with the provisions of chapter 13 of this title." And the Panel has long expressed its willingness to appoint additional transferee judges in litigations whose size and complexity make it difficult for the original transferee judge to handle § 1407 proceedings alone. *See In re Multidistrict Civil Antitrust Actions Involving Antibiotic Drugs,* 320 F.Supp. 586, 588 (J.P.M.L.1970). We emphasize our intention to do everything within our power to provide such assistance in this docket.

---

10. The *Asbestos Committee Report, supra,* noted at 15:

Judge Charles Weiner, the asbestos case manager in the Eastern District of Pennsylvania, is able to call upon over 20 active and senior judges in the district to handle asbestos cases on a priority basis. In addition to mandating standard, abbreviated pleadings, such as complaint, answer, and discovery requests, Judge Weiner meets regularly with counsel and handles on a regular basis all motions and discovery requests. Applying these sophisticated case management techniques, Judge Weiner and his colleagues have disposed of more than 2,000 cases through 1990. Another testament to Judge Weiner's techniques comes from the Panel pleading of certain plaintiffs already before him in the Pennsylvania district:

The Eastern District of Pennsylvania may be unique in another respect, and that again is due to the involvement of the Court. Perhaps no other jurisdiction has had the mutual cooperation of liaison counsel who have been instrumental, together with the Court in attempting to resolve the asbestos problem.

The adversary system remains, but the Court has eliminated the usual posturing of the litigants and has encouraged them to come up with programs and solutions. The classic example is the unique program established by counsel with the Court of binding arbitration through stipulated percentage of defendants' liability. The arbitrators are experts in asbestos litigation, and the medical issues are tried by submission on report. The average disposition rate is four cases in one day without judicial time.

Pleading 87, Response of Greitzer and Locks at 15.

Our reference to these passages is not meant to be an endorsement of any pretrial techniques to the exclusion of others, and in no way should be viewed as limiting Judge Weiner in his assessment of the appropriate tools to be used now that all federal personal injury/wrongful death asbestos actions will be before him for pretrial proceedings. We do consider such passages to be helpful, however, in allaying the fears of parties not familiar with Judge Weiner that § 1407 transfer will result in their actions entering some black hole, never to be seen again.

Before making any specific appointments, however, we deem it advisable to allow the transferee judge to make his own assessment of the needs of this docket and communicate his preferences to us.

The Panel is under no illusion that centralization will, of itself, markedly relieve the critical asbestos situation. It offers no panacea. Only through the combined and determined efforts of the transferee judge and his judicial colleagues, of the many attorneys involved in asbestos matters, and of the parties, can true progress be made toward solving the "asbestos mess." This order does offer a great opportunity to all participants who sincerely wish to resolve these asbestos matters fairly and with as little unnecessary expense as possible.

Finally, in light of the Panel's disposition in this docket, it is necessary to remind parties and counsel of their continuing responsibility with respect to transfer of potential tag-along actions, including those either inadvertently overlooked at the time of the January 17, 1991 filing of the Panel's order to show cause or filed subsequent to the issuance of the Panel's order to show cause. We note that Panel Rule 13(e) provides as follows:

> Any party or counsel in actions previously transferred under Section 1407 or under consideration by the Panel for transfer under Section 1407 shall notify the Clerk of the Panel of any potential "tag-along actions" in which that party is also named or in which that counsel appears.

R.P.J.M.L., *supra*, 120 F.R.D. at 259.

IT IS THEREFORE ORDERED that, pursuant to 28 U.S.C. § 1407, the actions listed on the following Schedule A that are pending as of the date of this order, are not in trial, and are pending outside the Eastern District of Pennsylvania, be, and the same hereby are, transferred to the Eastern District of Pennsylvania and, with the consent of that court, assigned to the Honorable Charles R. Weiner for coordinated or consolidated pretrial proceedings with the actions on Schedule A that remain pending in that district and are not in trial.[11]

IT IS FURTHER ORDERED that Panel Rule 19(a) be, and the same hereby is, suspended for this docket.[12]

---

**11.** The Panel's authority under § 1407 is to transfer for "pretrial" proceedings; actions on Schedule A that have been resolved or are presently in trial are not intended to be within the scope of the Panel's transfer decision. Given the tremendous number of actions pending in almost every federal district, however, it is not possible for the Panel to know at any one time the current status of all actions on Schedule A. When, pursuant to § 1407(c), the clerks of the transferor district courts receive a certified copy of the MDL–875 transfer order from the clerk of the transferee district court, we request the transferor district clerks to notify the Clerk of the Panel of any actions on Schedule A in their districts that have been resolved or are in trial, so as to permit the Panel to issue a correction order excluding such actions from transfer. We also remind counsel in such actions of the requirements of Panel Rule 10(f):

> With respect to any action that is the subject of Panel consideration, counsel shall notify the Clerk of the Panel of any development that would partially or completely moot the matter before the Panel.

*Id.* at 257.

**12.** Panel Rule 19(a), *id.* at 263, requires clerks of transferor district courts to forward to the clerk of the transferee district court the complete original file and docket sheet for each transferred action. Because of the voluminous files in this docket, we are suspending this rule. Instead, we will rely on the judgment of the transferee judge to request from the transferor district clerks or the parties whatever case files and docket sheets he needs.

## SUMMARY OF SCHEDULE A
## DOCKET NO. 875
## IN RE ASBESTOS PRODUCTS LIABILITY LITIGATION (NO. VI)

| DISTRICT | # OF CASES | DISTRICT | # OF CASES |
|---|---|---|---|
| AK. | 6 | MS., S. | 997 |
| AL., N. | 58 | MT. | 79 |
| AL., S. | 64 | NC., E. | 83 |
| AR., E. | 75 | NC., M. | 27 |
| AR., W. | 18 | NC., W. | 126 |
| AZ. | 112 | ND. | 12 |
| CA., C. | 31 | NE. | 93 |
| CA., E. | 1 | NH. | 61 |
| CA., N. | 3 | NJ. | 147 |
| CA., S. | 4 | NM. | 63 |
| CO. | 4 | NV. | 22 |
| CT. | 345 | NY., E. | 425 |
| DC. | 32 | NY., N. | 589 |
| DE. | 16 | NY., S. | 1441 |
| FL., M. | 220 | NY., W. | 420 |
| FL., N. | 1 | OH., N. | 4022 |
| FL., S. | 135 | OH., S. | 84 |
| GA., M. | 39 | OK., E. | 2 |
| GA., N. | 180 | OK., N. | 538 |
| GA., S. | 673 | OK., W. | 17 |
| HI. | 105 | OR. | 75 |
| IA., N. | 19 | PA., E. | 5703 |
| IA., S. | 65 | PA., M. | 244 |
| ID. | 30 | PA., W. | 264 |
| IL., C. | 166 | SC. | 266 |
| IL., N. | 459 | SD. | 2 |
| IL., S. | 37 | TN., E. | 78 |
| IN., N. | 1 | TN., M. | 65 |
| IN., S. | 169 | TN., W. | 29 |
| KS. | 26 | TX., E. | 1165 |
| KY., E. | 48 | TX., N. | 34 |
| KY., W. | 64 | TX., S. | 477 |
| LA., E. | 163 | TX., W. | 24 |
| LA., M. | 89 | UT. | 21 |
| LA., W. | 48 | VA., E. | 618 |
| MA. | 2630 | VA., W. | 275 |
| MD. | 597 | VI. | 61 |
| ME. | 39 | WA., E. | 14 |
| MI., E. | 242 | WA., W. | 193 |
| MI., W. | 9 | WI., W. | 22 |
| MN. | 12 | WV., N. | 23 |
| MO., E. | 69 | WV., S. | 586 |
| MO., W. | 42 | WY. | 1 |
| MS., N. | 5 | | |

**TOTAL DISTRICTS:** 87

**TOTAL TRANSFERS:** 26,639