NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 19a0564n.06

Case Nos. 16-4146; 16-4269; 16-4354; 16-4757; 17-3238;
17-3480; 17-3735; 17-3915; 17-3918; 18-3077

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Nov 08, 2019
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| JAMES MATTHEWS et al., | ) | |
| | ) | |
| Plaintiffs-Appellants, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE NORTHERN DISTRICT OF |
| CHAS. KURZ & CO., INC. et al., | ) | OHIO |
| | ) | |
| Defendants-Appellees. | ) | |

BEFORE: SILER, STRANCH, and NALBANDIAN, Circuit Judges.

**SILER, Circuit Judge.** Plaintiffs are hundreds of merchant mariners who allege injury from exposure to asbestos-containing products on board commercial vessels. The mariners filed their cases in the Northern District of Ohio, but the cases were eventually transferred to multidistrict litigation in the Eastern District of Pennsylvania. After pretrial proceedings were concluded in Pennsylvania, that court ruled the Northern District of Ohio did not have personal jurisdiction over the mariners' claims and dismissed most defendants. The mariners appeal the decision to this court. Judgment is **VACATED** as to four Appellants and **AFFIRMED** as to the remainder.

I.

In the 1980s, thousands of merchant mariner-asbestos claims were filed in the Northern District of Ohio against various ship-owners and asbestos manufacturers and suppliers. *In re Asbestos Prods. Liab. Litig. (No. VI) (Bartel Opinion)*, 965 F. Supp. 2d 612, 614-15 (E.D. Pa. 2013). The claims were processed through a specialized maritime docket, known as the "MARDOC." *Id.* Appellants filed claims in the MARDOC at various times over the past three decades.

Early on, ship-owner defendants filed motions to dismiss for lack of personal jurisdiction. *Kalama v. Matson Navigation Co., Inc.*, 875 F.3d 297, 300 (6th Cir. 2017). Judge Lambros, presiding over the MARDOC, held hearings on these motions in 1989. *Id.* While he concluded that a significant number of defendants were not subject to personal jurisdiction in Ohio, he announced that the relevant cases should be transferred to venues having proper jurisdiction. *Id.* Four of the appellants in this appeal had filed claims at the time of Judge Lambros's ruling; the remaining 237 appellants filed sometime later.

The ruling was entered by two separate orders. Order No. 40 instructed MARDOC plaintiffs to report their choice of forum in cases subject to transfer for lack of personal jurisdiction, *Kalama*, 875 F.3d at 300, and stated "[p]arties who, upon reconsideration of their motions to dismiss or transfer, wish to remain in this jurisdiction need only file answers to the complaints in accordance with the deadlines established below." Order No. 41 ordered transfer of cases to forums plaintiffs identified as having sufficient contacts to exercise personal jurisdiction.

Cases were never transferred pursuant to Order No. 41. Instead, ship-owner defendants filed two master answers, which sought to expressly preserve the defendants' personal-jurisdiction defense. *Kalama*, 875 F.3d at 301. Plaintiffs also filed a motion to transfer in toto, which sought

to transfer all defendants in a given case to a single forum to avoid splintering individual cases across multiple jurisdictions. *Id.* In response to the proposition that defendants be transferred in toto, some ship-owner defendants pointed out:

> Several nonresident defendants, although not subject to the personal jurisdiction of this Court, nevertheless agreed to waive their personal jurisdiction defense as the quid pro quo to avoid the expense of litigating these cases in as many as 13 different jurisdictions simultaneously, and to take advantage of the consolidated handling available in this Court.
> . . .
>
> Furthermore, some nonresident defendants who are not subject to the personal jurisdiction of this Court elected to waive that valuable due process right and submit themselves to the Court's jurisdiction to take advantage of this Court's experience in the handling of mass tort litigation, the consolidated handling of cases available in this Court, and to avoid the inconvenience of litigating these cases simultaneously in 13 scattered jurisdictions.

*Id.* (emphasis in original). Judge Lambros denied in toto the motion to transfer and the cases remained in the MARDOC.

Administration of the cases continued through 1990, with many cases proceeding through the pretrial stage. In January 1991, forty-four cases were transferred from the MARDOC to the Eastern District of Michigan over objection by defendants. In a hearing on the transfer, counsel for the defendants being transferred stated:

> I had one point that I wanted to be sure that the Court understood; we did not agree or concede to trials of any of these cases in Detroit. We had put our objection on the record before, but trials of the Ohio cases in Detroit are something that our clients waived jurisdictional objections to proceed here in Cleveland.

- 3 -

*Kalama*, 875 F.3d at 302. Nonetheless, Judge Lambros transferred the cases to Michigan. The four appellants who filed by the time Judge Lambros made his original ruling on personal jurisdiction were in the transfer group.[1]

The Detroit Appellants were not in Detroit for long. The Eastern District of Michigan issued a decision a few months after the transfer granting a motion by defendants for retransfer of the cases back to Ohio for continued litigation and trial. Before that ruling issued, defendants in Detroit also asked this court to issue a writ of mandamus ordering retransfer to Ohio. This court declined to do so, given that motions involving retransfer were still pending in the district court. *In re Am. President Lines, Ltd.*, 929 F.2d 226, 227 (6th Cir. 1991).

In the summer of 1991, the Judicial Panel on Multidistrict Litigation ("JPML") established MDL 875 to consolidate all actions alleging personal injury from asbestos then pending in federal district courts. *In re Asbestos Prods. Liab. Litig. (No. VI)*, 771 F. Supp. 415 (J.P.M.L. 1991). Over 26,000 cases were immediately transferred to the MDL, which was consolidated in the Eastern District of Pennsylvania. *Id.* Defendants in the MARDOC argued that, since a litigation plan was already in place in the Northern District of Ohio, the cases should not be sent to MDL 875. *Kalama*, 875 F.3d at 302. The JPML rejected this argument and the MARDOC cases were transferred (which at this point included the Detroit and some Remaining Appellants). *Id.* Remaining Appellants bringing claims after creation of the MDL followed a practice of filing their complaint in the Northern District of Ohio to be immediately transferred to MDL 875. MARDOC

---

[1] For clarity's sake, the four appellants transferred to the Eastern District of Michigan will be referenced as "Detroit Appellants;" appellants that were not transferred to the Michigan court will be referenced as "Remaining Appellants;" and references to all appellants will simply be notated as "Appellants."

cases in the MDL were essentially inactive until 2008, when they were reactivated and assigned to Judge Robreno. *Id.*

The MDL court issued two decisions central to this appeal. In 2013, it granted motions to dismiss by 418 MARDOC defendants based on lack of personal jurisdiction (the "*Bartel Opinion*"). 965 F. Supp. 2d 612, 615-16 (E.D. Pa. 2013). The operative question for the MDL court was whether the Northern District of Ohio—where the cases would be transferred upon completion of pretrial proceedings in the MDL—had personal jurisdiction to try the cases. *Kalama*, 875 F.3d at 302. The MDL court determined, as had the Northern District of Ohio in 1989, that no personal jurisdiction existed. *Bartel Opinion*, 965 F. Supp. 2d at 619-20. In addition, it rejected arguments by plaintiffs that defendants had waived their defense of lack of personal jurisdiction, writing:

> [I]t is apparent from the record that despite filing answers, defendants did not intend to waive the defense. In addition to including standard language about the personal jurisdiction defense, the answers included prefaces that specifically stated that defendants were filing the answers "under protest" pending review by the Court of Appeals of Judge Lambros' decision to transfer rather than dismiss the cases. In seeking to comply with Judge Lambros' orders, the defendants faced a Hobson's choice: they could either have agreed to a transfer of the cases to another jurisdiction (and thus lost the ability to assert cross-claims against manufacturer defendants), or they could have chosen to remain in the Northern District of Ohio and lost the defense of lack of personal jurisdiction.
>
> By filing answers which clearly identified the defense, while at the same time seeking interlocutory review of Judge Lambros' order, defendants preserved and did not waive the defense.

*Id.* at 621–22 (footnote omitted) (citations omitted).

The MDL court also denied the plaintiffs' request to transfer the cases to venues with proper jurisdiction, rather than outright dismissing particular defendants. *Id.* at 622-23. In its reading of *Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26 (1998), an MDL

court that has seen a case through the pretrial phase could either rule on the dispute or recommend the JPML transfer the case back to the transferor court for trial. *Bartel Opinion*, 965 F. Supp. 2d at 622. But it may not transfer cases to itself or to districts other than the transferor. *Id.* Even were it able, the MDL court determined that no good cause existed for such transfers in the cases before it:

> Plaintiffs continued filing thousands of cases in the Northern District of Ohio after Judge Lambros stated in 1989 that the court did not have personal jurisdiction over the defendants. Being on notice that there was no personal jurisdiction over the defendants in the Northern District of Ohio, and having chosen to continue the litigation there, Plaintiffs cannot complain that it is now unjust for the motions to dismiss to be granted.

*Id.* at 623 (footnote omitted) (citations omitted).

In 2014, the MDL court granted additional motions to dismiss by MARDOC defendants. *In re Asbestos Prods. Liab. Litig. (No. VI) (Jacobs Opinion)*, MDL No. 875, 2014 WL 944227 (E.D. Pa. Mar. 11, 2014). While the plaintiffs submitted "additional" evidence that defendants had waived the defense of personal jurisdiction, the MDL court was not convinced:

> Viewed together, the Court is not persuaded that these exhibits show by a preponderance of the evidence a universal waiver by all defendants, in all cases, in perpetuity. What the snippets from briefs and letters reflect, at best, is that some defendants in these cases either considered or would have been willing to accept a court order keeping their individual case in the Northern District of Ohio (as opposed to being transferred to various districts) in return for waiving the defense of personal jurisdiction.

*Id.* at *5 (footnote omitted).

The MDL court dismissed thousands more MARDOC cases by orders referencing the *Bartel* and *Jacobs* opinions. *Kalama*, 875 F.3d at 303-04. Appellants' claims were dismissed in this way in 2014. However, each Appellant sued at least one additional defendant over which the Northern District of Ohio had personal jurisdiction. Thus, the JPML remanded the cases back to

the transferor court in Ohio, which dismissed the remaining defendant in each case and entered final judgment. *Id.* at 304. Appellants appeal the Northern District of Ohio's entry of final judgment, including the orders of the Eastern District of Pennsylvania dismissing certain defendants for lack of personal jurisdiction.

## II.

We have already determined appellate jurisdiction exists over the orders of the Eastern District of Pennsylvania. *Kalama*, 875 F.3d at 304-05 ("[T]he E.D. of Pennsylvania's orders became appealable, and therefore 'reviewable decisions,' only through the N.D. of Ohio's final judgment. Because that final judgment arose within our territorial jurisdiction, [28 U.S.C.] § 1294(a) required plaintiff-appellants to appeal to the Sixth Circuit").

The MDL court's finding that defendants did not waive their personal jurisdiction defense is reviewed for abuse of discretion. *Id.* at 300. Its decision to dismiss defendants' cases, rather than transfer them, is also reviewed for abuse of discretion. *See, e.g.*, *Stanifer v. Brannan*, 564 F.3d 455, 456, 460 (6th Cir. 2009).[2]

## III.

In 2013, the MDL court framed its task as follows:

> Over at least the past 25 years, the MARDOC litigation has reached Dickensian proportions. Plaintiffs have passed away; memories have faded; corporations have filed for bankruptcy; the legislature has enacted new laws; lawyers have come and gone, and so have judicial officers. The one constant in this scenario is that the MARDOC docket has grown in numbers, complexity and scope.

---

[2] Appellants argue they are simply appealing the MDL court's interpretation of *Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26 (1998). Thus, the appeal concerns only a jurisdictional decision based on a pure question of law and the review should be de novo. As explained below, we reject this reframing because it finds little basis in the opinion and, at heart, Appellants are simply challenging Judge Robreno's decision to dismiss rather than transfer—a decision subject to review for abuse of discretion.

> Now, some 25 years later, the Court, with the assistance of counsel, is called upon to divine the meaning of less-than-pellucid orders entered long ago by prior courts, and to disentangle the parties from a web of procedural knots that have thwarted the progress of this litigation.

*Bartel Opinion*, 965 F. Supp. 2d at 615. This framing remains applicable on appeal.

This court has already addressed many of the issues raised by Appellants in a published opinion. In *Kalama*, ten plaintiffs who originally filed in the MARDOC appealed rulings by the MDL court following entry of final judgment by the Northern District of Ohio. 875 F.3d at 299. This court ruled the MDL court did not abuse its discretion by finding the Northern District of Ohio lacked personal jurisdiction; that many of the same defendants in this appeal did not waive their personal jurisdiction defense; and the MDL court was correct in its reading of *Lexecon*. *Id.* at 305-09. The *Kalama* decision is binding on much of this appeal.

We first address arguments that the MDL court incorrectly determined Defendant-Appellees did not waive the defense of personal jurisdiction in cases involving the Detroit Appellants. Second, we address arguments made by all Appellants that the MDL court erred by dismissing Defendant-Appellees over which the Northern District of Ohio did not have personal jurisdiction.

**A. Waiver of Personal Jurisdiction Defense by Defendant-Appellees in Cases Brought by the Detroit Appellants**

Personal jurisdiction may be waived implicitly or explicitly, and "[t]he actions of the defendant may amount to a legal submission to the jurisdiction of the court, whether voluntary or not." *Days Inns Worldwide, Inc. v. Patel*, 445 F.3d 899, 905 (6th Cir. 2006) (quoting *Transaero, Inc. v. La Fuerza Aerea Boliviana*, 162 F.3d 724, 729 (2d Cir. 1998)). Waiver occurs when the "submissions, appearances and filings . . . give [P]laintiff a reasonable expectation that [Defendants] will defend the suit on the merits or . . . cause the court to go to some effort that

would be wasted if personal jurisdiction is later found lacking." *Gerber v. Riordan*, 649 F.3d 514, 519 (6th Cir. 2011) (quotation omitted) (alterations in original).

### i. Kalama *and its Application*

At the outset, the breadth of Appellants' argument should be noted. While Appellants purport to argue that Appellees waived their defense of lack of personal jurisdiction in cases with the Detroit Appellants, several of their arguments apply to both the Detroit and Remaining Appellants—the arguments focus on activity applying to the entire MARDOC, rather than solely to the Detroit Appellants' cases. This court has previously rejected those arguments in *Kalama*, and we are bound by that decision. *Kalama*, 875 F.3d at 305-07.

"A panel of this Court cannot overrule the decision of another panel. The prior decision remains controlling authority unless an inconsistent decision of the United States Supreme Court requires modification of the decision or this Court sitting en banc overrules the prior decision." *Salmi v. Sec'y of Health & Human Servs.*, 774 F.2d 685, 689 (6th Cir. 1985) (citation omitted). *Kalama* thus forecloses arguments made by Appellants in this appeal.

Nonetheless, Appellants make two arguments as to why *Kalama* was wrongly decided. These arguments fail. First, Appellants attack *Kalama*'s conclusion that the master answers filed by Appellees in the Northern District of Ohio did not waive their defense of personal jurisdiction. *See, e.g.*, *Kalama*, 875 F.3d at 305 ("Because the Federal Rules of Civil Procedure do not authorize a district court to strip a defendant of its right to assert an affirmative defense in an answer, it was not an abuse of discretion to determine that the ship-owner defendants could seek to preserve their personal-jurisdiction defense at that time"). Appellants argue that personal jurisdiction had already been decided by the time Appellees filed their answers, and thus Judge Lambros did not give an improper "ultimatum" under the Federal Rules of Civil Procedure as the *Kalama* court found.

But the Federal Rules of Civil Procedure explain that a party waives a defense based on lack of personal jurisdiction if it fails to "include it in a [motion or] responsive pleading," such as an answer. Fed. R. Civ. Pro. 12(h)(1)(B). Judge Lambros's order required the opposite: if a party did not file an answer, and thus did not raise the defense in a responsive pleading, it would be preserved; and, if Appellees did file answers, they waived the defense. Thus, the *Kalama* opinion was correct to find the order inconsistent with the Rules, which explain the defense may be preserved by answer. That defendants also raised the defense in a motion does not suggest they may be prevented from raising it in their responsive pleading. *See Kalama*, 875 F.3d at 305.

Second, Appellants attack the *Kalama* opinion's holding that, while some evidence could support an inference that some ship-owner defendants consented to personal jurisdiction "to avoid transfer to scattered venues, the evidence is too vague to render forfeiture the only reasonable conclusion." *Id.* at 307. The opinion points out that the MDL court was "justifiably skeptical" that the pleadings relied on by Appellants for the proposition that all Appellees waived the defense merely stated that "some" and "several" nonresident defendants had done so. *Id.* Appellants argue the vagueness regarding which defendants waived is clarified in this appeal. They quote the same response to their 1990 motion to transfer in toto relied on in *Kalama*, this time pointing to different language: "Defendants represented by Thompson, Hine and Flory (Defendants) strenuously oppose[d]" transfer. Appellants argue this statement makes clear that later statements in the pleading, which concede personal jurisdiction, must be attributed to Appellees in the Detroit Appellant cases, since they were represented by Thompson, Hine and Flory.

This argument is unpersuasive. First, the pleading from 1990 was considered by the court in 2017 and found insufficient. *Id.* Second, this newly quoted language does not go very far: opposing the motion to transfer in toto does not evidence an expectation that Appellees will

proceed on the merits in Ohio, only that they do not want to proceed together in some other district. The only statements proving waiver of personal jurisdiction are the ones in the pleading explicitly saying so, and those statements are not attributed to all Appellees represented by Thompson, Hine and Flory, but rather to "some" and "several" nonresident defendants. This court has already explained that the statements are too vague to evidence an abuse of discretion by the MDL court. *Id.*

In sum, *Kalama* is binding on the Panel for the 237 Remaining Appellants, foreclosing arguments that Appellees waived their personal jurisdiction defense. And, regardless, Remaining Appellants have not shaken faith in the reasoning of that opinion.

### ii.    *Arguments Regarding the Detroit Appellants*

Appellants are correct that the current appeal is distinguishable from *Kalama* to the extent it contains Detroit Appellants; the *Kalama* opinion recognized that none of the Plaintiff-Appellants in that case had been transferred to the Eastern District of Michigan. *Id.* at 306. Thus, the court is confronted with the question of whether activities by Defendant-Appellees specific to the transfer waived the defense of personal jurisdiction. The MDL court found no such waiver; this is an abuse of discretion.

Two actions by Defendant-Appellees in the Detroit Appellants' cases show waiver.[3] First, Detroit Appellees opposed transfer to Michigan in January 1991, arguing they did not waive personal jurisdiction in Michigan, but did so in Ohio:

---

[3] Defendant-Appellees in the Detroit Appellants' cases are, of course, some of the same Defendant-Appellees named in the Remaining Appellants' cases. However, the *Kalama* panel held that imputing statements regarding waiver of personal jurisdiction "made on behalf of a defendant in one lawsuit to the same defendant in a separate suit" would be improper. *Kalama*, 875 F.3d at 306. Appellants do not challenge this conclusion; analysis of statements regarding waiver made only in the Detroit Appellant cases, and any remedy arising therefrom, is limited to

> I had one point that I wanted to be sure that the Court understood; we did not agree or concede to trials of any of these cases in Detroit. We had put our objection on the record before, but trials of the Ohio cases in Detroit are something that our clients waived jurisdictional objections to proceed here in Cleveland. To go to Detroit is something they don't agree to.

Unlike the responsive pleading to plaintiffs' 1991 motion to transfer in toto, which this court determined too vague to prove waiver, statements made in the 1991 transfer hearing are more readily assigned to particular defendants in particular cases; namely, to defendants in cases being transferred to the Eastern District of Michigan (Detroit Appellees).

Detroit Appellees argue this connection is not entirely clear. Before the MDL court, some defendants conceded that this language proves waiver of personal jurisdiction. *Jacobs Opinion*, 2014 WL 944227 at *5 (E.D. Pa. Mar. 11, 2014). However, the MDL court agreed with those defendants that the language only applied to sixteen specific cases, none of which was before the MDL court. *Id.* That determination has since been reviewed and found to be error. The Third Circuit, after review of the hearing transcript, concluded that the statements applied to "the clusters [of cases] that Chief Judge Lambros intended to transfer to the Eastern District of Michigan." *In re Asbestos Prods. Liab. Litig.*, 661 F. App'x 173, 177-78 (3d Cir. 2016). In *Kalama*, this court agreed with the Third Circuit's conclusion:

> The Third Circuit correctly determined that the MDL court clearly erred when it found that the objection to transfer out of the N.D. of Ohio from the January 8, 1991, hearing pertains only to sixteen cases that were not before the MDL court in 2014. Reading the hearing transcript as a whole, it is clear that the objection arose after Judge Lambros had switched the topic of conversation from the sixteen cases set for trial in the N.D. of Ohio to the group of cases destined for the E.D. of Michigan. Furthermore, it would not make sense for the defendants to object to a "transfer" of the sixteen cases set for trial in the N.D. of Ohio, because Judge Lambros was not considering transferring those cases. However, because the forty-

---

those cases. For clarity, we reference the Defendant-Appellees in these cases as "Detroit Appellees."

four cases set for transfer to the E.D. of Michigan did not include any of the cases currently before us, the MDL court's error nevertheless does not render its decision an abuse of discretion as to the ten plaintiff-appellants' cases.

*Kalama*, 875 F.3d at 307 n.3 (citations omitted). Unlike in *Kalama*, however, the error is not harmless here: The Detroit Appellants' cases were within the clusters transferred to the Eastern District of Michigan.

The Detroit Appellees are correct to point out that the above conclusion in *Kalama* was dicta, given that *Kalama* did not involve cases transferred to Michigan. But most of Detroit Appellees' briefing centers on the dangers of dicta, and offers no compelling reason why the *Kalama* court's well-reasoned, exhaustive review of the hearing transcript (supported by similar review from the Third Circuit) is error. We again follow *Kalama*.

A finding of waiver is also supported by activity following transfer to the Eastern District of Michigan. Detroit Appellees sought from this court a writ of mandamus directing the Northern District of Ohio to vacate its transfer order and preventing the Eastern District of Michigan from exercising jurisdiction. *In re American President Lines, Ltd.*, 929 F.2d 226, 227 (6th Cir. 1991). This alone, and other challenges to the transfer, could be interpreted as only showing grievance with the transfer itself, rather than evidence that Detroit Appellees wished to proceed on the merits once back in Ohio. But when denying the writ, this court specifically noted "[t]he pleadings before this court indicate that a motion to remand the cases to the Northern District of Ohio and *a motion to require trial in that district* are pending in the Eastern District of Michigan." *Id.* (emphasis added). And once in Michigan, Detroit Appellees stated, "[e]ighty-two defendants represented by Thompson, Hine and Flory move the [Eastern District of Michigan] to retransfer MARDOC Priority Trial Clusters 1, 2, 5 and 6 . . . to the Northern District of Ohio, Eastern Division, *for pre-trial management and trial*." Appellants represent, and Appellees do not appear to dispute, that

all Detroit Appellees were represented by Thompson, Hine and Flory. As early as 1991 then, Appellees in cases transferred to the Eastern District of Michigan can be shown to have evidenced a desire to proceed on the merits in the Northern District of Ohio. This constitutes waiver. *Gerber*, 649 F.3d at 519.

This same conclusion has been reached by the Third Circuit. *In re Asbestos Prods. Liab. Litig.*, 661 F. App'x 173, 177-78 (3d Cir. 2016) (finding MDL court erred in concluding statements waiving personal jurisdiction did not apply to cases transferred to the Eastern District of Michigan and finding waiver confirmed by post-transfer filings). Further, *Kalama* made clear that it was not considering evidence relevant only to cases transferred to Michigan. *Kalama*, 875 F.3d at 306-07. In concurrence, Judge Stranch explained:

> The opinion notes that the Third Circuit "correctly" reversed dismissal because the January 1991 statements made by counsel for two of the defendant-appellees confirmed that they had consented to proceeding in the N.D. of Ohio for the purposes of a cluster of twenty cases. Where such evidence of waiver exists, dismissal remains inappropriate.

*Id.* at 309-10 (Stranch, J., concurring). Here, we are confronted with that evidence in four cases. Thus, we remand the Detroit Appellants to the Northern District of Ohio, where Detroit Appellees have consented to jurisdiction.

### B. The MDL Court's Dismissal of Defendant-Appellees

The MDL process is governed by 28 U.S.C. § 1407, which specifically provides for both entry of cases into MDL and, eventually, their exit from it. Each action transferred to MDL "shall be remanded by the panel at or before the conclusion of such pretrial proceedings to the district from which it was transferred unless it shall have been previously terminated." *Id.* § 1407(a). This was the process Judge Robreno followed; once a case survived summary judgment and no pending

motions remained, the MDL court suggested the JPML remand the case to the transferor court for trial. *Bartel Opinion*, 965 F. Supp. 2d at 622 n.13.

But for cases transferred to MDL 875 from the MARDOC, the transferor court (the Northern District of Ohio) did not have personal jurisdiction over nearly all defendants.[4] Having determined that Appellees did not waive their defense of personal jurisdiction—a decision we uphold as to the 237 Remaining Appellants—Judge Robreno faced a dilemma in how to proceed with the MARDOC cases. His opinion began by setting out two principles of transfer process in MDL.

One principle came from the Supreme Court's decision in *Lexecon Inc. v. Milberg et al.*, 523 U.S. 26 (1998). There, the Supreme Court held improper the order of an MDL court transferring a case under 28 U.S.C. § 1404(a) to itself for trial, rather than suggesting remand to the transferor court. *Id.* at 28. The Supreme Court found that a district court's self-transfer under § 1404(a) "thwarts the [JPML's] capacity to obey the unconditional command of § 1407(a)," which requires it remand cases to transferor courts. *Id.* at 36.

So too, the MDL court concluded, does § 1407(a) prevent transfer of the cases, or suggest that the JPML transfer the cases, to district courts other than the transferor. *Bartel Opinion*, 965 F. Supp. 2d at 622. This court has agreed that the "reasoning in *Lexecon* is not limited to self-transfer under § 1404(a)," and direct transfer to districts other than the transferor would undermine § 1407(a). *Kalama*, 875 F.3d at 308 ("Thus, the E.D. of Pennsylvania correctly held that it had no authority to transfer plaintiff-appellants' claims to a district with proper jurisdiction").

---

[4] Appellants do not argue the Northern District of Ohio does in fact have personal jurisdiction over Appellees. Instead, they contend the MDL court erred by finding Appellees did not waive their personal jurisdiction defense and compounded the error by concluding it could not transfer the cases to the Ohio court for subsequent transfer to proper jurisdictions.

From these two principles, the MDL court determined: "It follows, therefore, that after an MDL transferee court has seen an MDL case through the pretrial phase, the MDL court can either rule on the dispute, or suggest to the JPML that it be remanded to the transferor court for trial." *Bartel Opinion*, 965 F. Supp. 2d at 622. In *Kalama*, we agreed with this two-fold path. *Kalama*, 875 F.3d at 308 ("[A]t the close of pretrial proceedings [an MDL court may] terminate the case or allow the JPML to remand the case to the originating, transferor court").

In MARDOC cases, an outstanding dispute existed regarding personal jurisdiction in the Northern District of Ohio. After concluding that no personal jurisdiction existed in the transferor court, and defendants had not waived the defense, the MDL court decided to dismiss the defendants, rather than suggest remand. *Bartel Opinion*, 965 F. Supp. 2d at 623. It determined no good cause existed for Appellants' suggestion that it request the JPML remand the cases to the Northern District of Ohio with instructions for that court to transfer the cases to appropriate jurisdictions. In making this determination, the MDL court pointed out:

> Plaintiffs continued filing thousands of cases in the Northern District of Ohio after Judge Lambros stated in 1989 that the court did not have personal jurisdiction over the defendants. Being on notice that there was no personal jurisdiction over the defendants in the Northern District of Ohio, and having chosen to continue the litigation there, Plaintiffs cannot complain that it is now unjust for the motions to dismiss to be granted.

*Id.* (citation omitted).

This court has already found the MDL court did not abuse its discretion by dismissing the cases, rather than suggesting transfer with the recommendation that the transferor court then send them to appropriate districts. *Kalama*, 875 F.3d at 308-09 ("The MDL court correctly reasoned that yet another transfer after nearly thirty years of litigation would not serve the interest of justice, and there is no guarantee that, had the court recommended remand and subsequent transfer, the

- 16 -

JPML would have adopted the recommendation"); *see also Stanifer*, 564 F.3d at 460 (holding district court did not abuse its discretion ordering dismissal of plaintiff who showed a "complete lack of diligence in determining the proper forum in the first place").

Now, Appellants argue *Kalama* is distinguishable because they raise an issue in this appeal not considered in that case. They argue Judge Robreno erred by concluding "dismissal was his only remedy under his faulty reading of *Lexecon*." In essence, their argument is that Judge Robreno never truly considered transfer of the cases, but instead read *Lexecon* as leaving him only one option: dismissal. According to Appellants, this is wholly different than the decision reviewed for abuse of discretion in *Kalama*; this new argument rests on the MDL court's reading of *Lexecon* and therefore should be reviewed de novo.

Appellants' argument misses the forest for the trees. A look at the full language of the order shows Judge Robreno did not consider dismissal his only option. He quite clearly explained that § 1407(a) allows an MDL court to either rule on disputes or suggest remand to the transferor court. *Bartel Opinion*, 965 F. Supp. 2d at 622. The limitations flowing from *Lexecon*—that MDL courts are foreclosed from directly transferring cases to themselves or to other districts—did not foreclose all but dismissal. *Id.* at 622-23. Quite the opposite, the MDL court explicitly considered its ability to suggest remand:

> For the same reasons, it would not be appropriate for this Court to suggest remand of these cases to the Northern District of Ohio for the transferor court to sort out issues pertaining to jurisdiction and/or transfer. Since the 1990's, plaintiffs have not pursued the possibility of the MDL Court's suggesting remand of these cases for those purposes. Additionally, even if this Court could transfer cases notwithstanding *Lexecon*, there would be no good cause for the MDL Court to transfer the cases to Ohio or any other jurisdiction.

*Id.* at 623 n.18. Thus, Appellants' argument that Judge Robreno did not consider remand of the cases to the Northern District of Ohio, or suggestion that the JPML do so, is simply incorrect.

Direct transfer was precluded by *Lexecon* and it determined suggestion of remand was inappropriate. This latter decision to dismiss, rather than suggest remand, has already been reviewed and upheld by this court. *Kalama*, 875 F.3d at 308-09.

Additionally, the relief now requested by Appellants—that the cases be remanded to the Northern District of Ohio for a determination on Appellees' motions to dismiss—sheds light on what is truly being appealed. Their argument in this appeal has been that, while the MDL court ultimately had two choices (dismissal or remand), it erred in determining that it only had a single choice (dismissal). Even were this argument correct, the relief requested makes the choice for the MDL court; the relief sends the cases to the Northern District of Ohio, restoring the dismissed defendants and placing the cases in the exact posture they would have been if Judge Robreno had chosen to suggest transfer and the JPML had obliged. In this sense, Appellants' argument is not reframing at all: they are in effect asking this court to review Judge Robreno's decision to dismiss and require it be made the other way. But that decision has already been upheld in a published opinion of this court and we are bound. *Id.*

Put simply: the MDL court certainly could have suggested remand to the JPML, likely with an additional suggestion that the cases be transferred once they reached the Northern District of Ohio. But even assuming the second suggestion was heeded down the line, those transfers would be pursuant to statutes requiring "good cause" or the transfer to be "in the interest of justice." 28 U.S.C. §§ 1404(a), 1406(a), 1631. The MDL court cogently explained those requirements were not satisfied here, and this court has already found its explanation sufficient. *Kalama*, 875 F.3d at 308-09.

IV.

For the foregoing reasons, the judgment is **VACATED** as to the four Detroit Appellants

and **AFFIRMED** as to the Remaining Appellants.