John H. TABERER, Margaret Taberer, his wife,

v.

ARMSTRONG WORLD INDUSTRIES, INC., Asten–Hill Manufacturing Company, the Celotex Corporation, Eagle–Picher Industries, Inc., Fibreboard Corporation, H.K. Porter Company, Inc., Hopeman Brothers, Inc., Keene Corporation, Owens–Corning Fiberglas Company, Owens–Illinois Glass Company, Pittsburgh Corning Corporation, P.P.G. Industries, Raymark Industries, Inc., Southern Textile Corporation, Turner & Newall, Ltd., Forty–Eight Insulating, Inc., National Gypsum Company, Manville Personal Injury Settlement Trust, United States Gypsum Company,

David M. Weinfeld, Appellant.

No. 91–5265.

United States Court of Appeals, Third Circuit.

Argued Sept. 3, 1991.

Decided Jan. 23, 1992.

Randy H. Kaplan (argued), Merchantville, N.J., for appellant.

Michael Chertoff, U.S. Atty., Daniel J. Gibbons (argued), Asst. U.S. Atty., Newark, N.J., for appellee.

Before BECKER, SCIRICA, Circuit Judges and VanARTSDALEN, District Judge.*

---

* The Honorable Donald W. VanArtsdalen, United States District Judge for the Eastern District of Pennsylvania, sitting by designation.

OPINION OF THE COURT

BECKER, Circuit Judge.

Appellant David Weinfeld, a Pennsylvania lawyer, represented the plaintiffs in a number of asbestos cases transferred from the district court for the Eastern District of Pennsylvania to the district court for the District of New Jersey. Weinfeld appeals from an order of a New Jersey district judge adjudging him guilty of criminal contempt, fining him $5,000, and revoking his *pro hac vice* status in all cases pending before that district judge.

Weinfeld was charged with contempt because he failed to appear on several occasions before the United States magistrate judge to whom pretrial proceedings in some of the asbestos cases had been assigned, even though the magistrate judge specifically commanded Weinfeld's presence. As will appear, the contempt proceedings were plagued by confusion over the source of the magistrate judge's authority, which in turn caused confusion about the functions of both the magistrate judge and the district judge. The appeal thus raises interesting and important questions concerning the respective responsibilities of the magistrate judge and the district judge in punishing criminal contempts committed in proceedings before a magistrate judge.

The first question is whether either 28 U.S.C. § 636 (1988 & West Supp.1991) or 18 U.S.C. § 3401 (1988 & West Supp.1991), the statutes that define the jurisdiction of magistrate judges, authorizes a magistrate judge who desires to act upon a perceived contempt to do as the magistrate judge did here: hold a hearing at which the alleged contemnor must show cause why he should not be held in contempt and make findings of fact and conclusions of law. The second question is whether 28 U.S.C. § 636(e), which provides that after a magistrate judge has "certif[ied] the facts" of the perceived contempt to a judge of the district court, "[a] judge of the district court shall thereupon, in a summary manner, hear the evidence as to the act or conduct complained of," requires that the district judge try the contempt charges de novo or instead permits the district judge to do as the

district judge did here and rely upon the record of the hearing before the magistrate judge (after Weinfeld declined his offer to supplement that record).

In addition, Weinfeld advances a pair of significant questions regarding criminal contempt procedures in general. First, must the district court pursue civil contempt proceedings before resorting to a criminal contempt proceeding? Second, must the contemnor's conduct actually obstruct the administration of justice before sanctions for criminal contempt may be imposed?

We conclude that judicial officers are not required to resort to other procedures before embarking on a criminal contempt proceeding, and that actual obstruction is not a *sine qua non* of criminal contempt. We also hold that the magistrate judge lacked jurisdiction to hold a full-dress contempt hearing and that the district judge erred in adjudicating the contempt based on the record of that hearing, instead of holding a de novo hearing. Consequently, we will reverse the order of the district court holding Weinfeld in contempt.

Because the double jeopardy clause prohibits retrial when the government has failed to present minimally sufficient evidence at the first trial, we also examine the sufficiency of the evidence against Weinfeld. We conclude that the evidence that one of the non-appearances constituted criminal contempt was sufficient to uphold a conviction and, therefore, we will remand the case to the district court for further proceedings. Finally, because the issue of Weinfeld's *pro hac vice* status may arise again on remand, we point out that revocation of a lawyer's *pro hac vice* status must be accompanied by the procedures described in our jurisprudence.

## I. FACTS AND PROCEDURAL HISTORY

The background of this tempestuous appeal lies in a series of routine discovery and case management conferences before a

magistrate judge[1] to whom a number of asbestos cases had been assigned, pursuant to District of New Jersey local rules and practice, for pretrial purposes. As far as we can ascertain, the motive force behind the contempt proceedings was an intemperate letter Weinfeld sent to opposing counsel Honora Keane on October 11, 1990. In that letter, Weinfeld complained about the alleged failure of Keane's firm to cooperate in returning his client's medical records, which were needed by the client's treating physician. Weinfeld addressed an original of the letter to each magistrate judge assigned to coordinate discovery in the asbestos cases and sent copies to Keane.

Two weeks later, Keane responded with a letter in which she denied Weinfeld's account of the dispute over the medical records and chided him for his own alleged failures to cooperate in discovery. She addressed her letter to Weinfeld, but likewise sent copies to all the magistrate judges and counsel of record. Four days later, Weinfeld wrote Keane a strongly worded letter in which he not only defended his first letter, but also recast his original complaint that Keane's firm had failed to cooperate as an accusation that Keane had deliberately acted to impede his client from recovering the medical records. He also sent copies of this letter to all the magistrate judges.

On November 1, 1990, one of the magistrate judges issued an order setting a scheduling conference for November 14, 1990. The order specifically directed Weinfeld and his associate, Donald Burak, to attend. Based on later events, we assume that the reason the magistrate judge directed Weinfeld to appear personally was to censure him for the intemperance of his letters, but the notice did not so indicate, nor was that purpose communicated to Weinfeld's office. On November 2, 1990, both Weinfeld and Burak wrote to the magistrate judge to explain that although a scheduling conflict prevented Weinfeld from attending the November 14 conference,[2] Burak would be present and prepared to discuss discovery and scheduling. The conference was held and Burak appeared.

During the November 14 conference, the magistrate judge evidently considered imposing sanctions on Weinfeld for non-appearance pursuant to Federal Rule of Civil Procedure 16(f).[3] Opposing counsel, who had been directed to prepare an order embodying the magistrate judge's rulings during the November 14 conference, drafted a proposed order directing Weinfeld to appear, pursuant to Rule 16(f), at the next conference, which was scheduled for November 26, 1990. Counsel did not prepare this proposed order until December 11, 1990, however. Moreover, although the record indicates that an unsigned copy of the proposed order was sent to Weinfeld by opposing counsel, there is no indication that this order was ever signed by the magistrate judge. According to the docket sheet, no order directing Weinfeld to attend the November 26 conference was ever entered and, at all events, that conference was postponed to December 10 at Keane's request. The proposed order postponing

---

**1.** Pursuant to the Act of December 1, 1990, Pub.L. No. 101–650, 104 Stat 5117, United States magistrates are now known as "magistrate judges."

**2.** Weinfeld was scheduled to serve as an arbitrator in a court-annexed arbitration program in the Pennsylvania courts.

**3.** FRCP 16(f) states:

Sanctions. If a party or party's attorney fails to obey a scheduling or pretrial order, or if no appearance is made on behalf of a party at a scheduling or pretrial conference, or if a party or party's attorney is substantially unprepared to participate in the conference, or if a party or party's attorney fails to participate in good faith, the judge, upon motion or the judge's own initiative, may make such orders with regard thereto as are just, and among others any of the orders provided in Rule 37(b)(2)(B), (C), (D). In lieu of or in addition to any other sanction, the judge shall require the party or the attorney representing the party or both to pay the reasonable expenses incurred because of any noncompliance with this rule, including attorney's fees, unless the judge finds that the noncompliance was substantially justified or that other circumstances make an award of expenses unjust.

Rule 16(f) is the usual vehicle for imposing coercive or punitive sanctions in these circumstances.

the conference from November 26 to December 10 did direct Weinfeld to appear, but it made no mention of Rule 16(f).

Weinfeld did not appear at the December 10 conference but instead sent an associate, Ellis Davison, in his place. The participants apparently disagreed about the purpose of the December 10 conference. The magistrate judge, who evidently thought that an order directing Weinfeld to appear pursuant to Rule 16(f) had been entered when it had not, announced, "This is the return of an order to show cause why sanctions should not be imposed on Mr. Weinfeld." In contrast, Davison apparently thought that he was attending an ordinary discovery conference, for, after explaining that Weinfeld was absent because he was on trial in another court that day, Davison added that he was prepared to represent the plaintiffs in a Rule 16(c) conference.[4] The magistrate judge then informed Davison that he had wanted Weinfeld to appear not only because he wished to discuss discovery and scheduling, but also because he wanted to discuss the correspondence between Weinfeld and opposing counsel. After deciding to "carry" the (nonexistent) order to show cause until the next conference, which was scheduled for January 10, 1991, the magistrate judge adjourned the proceeding.

On December 17, 1990, the magistrate judge issued an order directing Davison to obtain a copy of the transcript of the December 10 proceeding and deliver it to Weinfeld. The order further specified that the "order to show cause" was carried until the January 10 conference "at which Mr. Weinfeld shall appear or be certified in contempt of court."

The January 10 conference was later postponed to January 24. Weinfeld again failed to appear, sending yet another associate from his firm, Robert Bembry, as his substitute. Bembry explained that Weinfeld was ill,[5] but admitted that he had seen Weinfeld at the office before leaving for the conference. The magistrate judge then asked the other lawyers present if there had been any other problems with Weinfeld or his firm.

On February 4, 1991, the magistrate judge issued an order directing Weinfeld to appear on February 15, 1991 to show cause why he should not be held in criminal contempt. The order also referred the matter to the United States Attorney for prosecution, but specified that if the *criminal* contempt order were discharged, the court would consider the imposition of *civil* contempt. Accordingly, the order also directed Weinfeld to show cause why he should not be held in civil contempt.

The hearing was held before the magistrate judge on February 15, 1991 as scheduled. The prosecution's principal evidence consisted of a stipulation in which Bembry and Davison related the events surrounding Weinfeld's non-appearances before the magistrate judge, consistent with the tenor of our description at page 891. At the beginning of the hearing, the government informed the magistrate judge that Weinfeld did not want to sign the stipulation. The magistrate judge directed that Weinfeld be put under oath and asked whether he agreed or disagreed with the stipulation. Weinfeld stated that he was reluctant to sign the stipulation because he lacked personal knowledge of some of the information it contained, but eventually agreed that he understood that the stipulation represented how Davison and Bembry would testify if called. After both sides were given an opportunity to present evidence and arguments, the magistrate judge announced the following findings and conclusions from the bench:

Number one. Defendant Weinfeld failed to appear in court on three separate occasions.

Number two. Defendant was on notice that he was to have appeared on all occasions.

Number three. With regard to the appearance when Mr. Weinfeld was on trial, I'm satisfied that an adequate basis for his nonappearance has been demonstrated in the record.

---

**4.** FRCP 16(c) sets forth a list of subjects that may be considered and resolved at pretrial conferences.

**5.** Weinfeld later explained that he had seen the doctor that morning.

Number four. With regard to Mr. Weinfeld's appearance as an arbitrator, for the reasons indicated previously I'm satisfied that he was aware of his obligation to this Court and he chose to put obligations as an arbitrator before his duties to his client and to this Court.

Number five. With regard to Mr. Weinfeld's failure to appear on January 24, 1991. Mr. Weinfeld had apparently been out-of-state the day before. Mr. Weinfeld appeared in his offices [at] approximately noon on January 24, 1991 and simply chose to send an associate rather than appear for his own reasons.

I am satisfied that Mr. Weinfeld's failure to appear on January 24, 1991 was wilful.

I am satisfied that a requisite showing of intent is made from all the inferences which I might reasonably draw from [the e]xhibits ... before me.

I am satisfied and I so certify Mr. Weinfeld in criminal contempt pursuant to 28 United States Code, Section 636.

On February 21, 1991, the magistrate judge filed an order: (1) finding that Weinfeld showed willful disregard of the court's orders by his failure to attend the November 14 and January 24 conferences; (2) directing that Weinfeld be certified in criminal contempt pursuant to 28 U.S.C. § 636; (3) referring the matter to the United States District Court for the District of New Jersey for further proceedings to be held on February 25, 1991; and (4) transmitting a transcript of the proceedings before the magistrate judge to the district court.

On February 25, 1991, a hearing was held before the district judge. When Weinfeld indicated that he wanted to cross-examine Davison regarding the stipulation submitted to the magistrate judge, the district judge initially refused, but then agreed to adjourn the hearing so that each side could prepare briefs on the question of whether Weinfeld should be permitted to supplement the record of the proceedings before the magistrate judge. Weinfeld's brief noted that the magistrate judge failed to indicate the authority under which he had conducted the show cause hearing and argued that it was incumbent upon the district judge to hold a trial on the merits.

The hearing resumed on March 1, 1991. The district judge began by asking Weinfeld's lawyer to determine whether there were any other disciplinary proceedings pending against Weinfeld, whether or not Weinfeld had ever been sanctioned under Federal Rule of Civil Procedure 11, and how many cases Weinfeld had in the district on a *pro hac vice* basis. After a recess, the hearing resumed with a discussion of these issues.

The district judge then turned to Weinfeld's request for a hearing. After noting that the government conceded that Weinfeld was entitled to "some type of summary hearing," the district judge asked Weinfeld what he wished to do. Weinfeld's lawyer responded, "I'd like to have a hearing." The district judge stated that after reading the briefs submitted by Weinfeld and by the government and reviewing the record of the proceedings before the magistrate judge, he had decided to "incorporate for the purposes of this hearing everything that was done before [the magistrate judge] and the entire record before [the magistrate judge] as being a record de novo in front of me." The district judge then asked Weinfeld whether he wanted to supplement that record. Weinfeld chose not to submit any additional evidence, but did take the opportunity to address the court and explain the various reasons why he failed to appear at the three conferences.

The district judge did not credit Weinfeld's excuses, but instead adopted the factual findings of the magistrate judge.[6] The district judge found Weinfeld in criminal contempt, fined him $5,000, and revoked Weinfeld's *pro hac vice* status in the cases pending before him. A written order to that effect was filed on March 27, 1991. It is from this order that Weinfeld appeals.

---

**6.** The district judge's order closely tracks the order issued by the magistrate judge. Compare the magistrate judge's order, set out at pages 893–94, with the district judge's order, which states that the court found as follows:

Weinfeld challenges his conviction on numerous grounds. He argues that: (1) the district court was required to hear the evidence against him de novo; (2) the government was required to show that his conduct impeded the administration of justice and failed to do so; (3) the district court was first required to pursue civil sanctions before initiating criminal contempt proceedings; (4) the evidence against him was insufficient; (5) Federal Rule of Criminal Procedure 42(b) required the magistrate judge to disqualify himself because the magistrate judge had once been associated with opposing counsel's law firm; (6) he was not afforded a hearing by an impartial tribunal because of the magistrate judge's prior association with opposing counsel's law firm; (7) his fifth amendment right not to incriminate himself was violated when the magistrate judge compelled him to testify against himself regarding the stipulation; and (8) the magistrate judge violated his first amendment right to free speech by attempting to compel him to appear for the purpose of discussing his correspondence with opposing counsel. We address those issues necessary to disposition of this appeal.[7]

## II. PROCEDURES FOR PUNISHING CRIMINAL CONTEMPT IN GENERAL

A. *Must the court first pursue civil contempt proceedings before resorting to punishment for criminal contempt?*

■ Weinfeld argues that his conviction must be reversed because no attempt was made to impose civil contempt sanctions before resorting to criminal contempt proceedings. The government responds that the district court was not required to pursue civil contempt sanctions first. We agree.

The contention that courts must resort first to civil contempt sanctions before initiating a criminal contempt proceeding stems from a footnote in *Shillitani v. United States*, 384 U.S. 364, 86 S.Ct. 1531, 16 L.Ed.2d 622 (1966). There the defendants were convicted of criminal contempt for refusing to testify before the grand jury after having been granted immunity. They argued that their convictions should be reversed because they had not been indicted and tried by jury. Finding that the contempt proceedings had been civil rather than criminal because the defendants' release from custody had been conditioned upon their willingness to testify, the Supreme Court concluded that they were not entitled to indictments and jury trials. The Court also held, however, that when the purpose of confining contemnors is to coerce them to testify, the confinement cannot continue after the grand jury has been discharged. In explaining that this restriction on confinement arises from the well-established doctrine that only " '[t]he least possible power adequate to the end proposed' " should be used in contempt cases, 384 U.S. at 371, 86 S.Ct. at 1536 (quoting *Anderson v. Dunn*, 19 U.S. (6 Wheat) 204, 231, 5 L.Ed. 242 (1821)), the

---

1. That the Defendant David M. Weinfeld failed to appear in the Court on three (3) occasions.

2. That the Defendant David M. Weinfeld was on notice he was to have appeared on all occasions.

3. That with regard to the Defendant David M. Weinfeld's excuse that he was acting as an arbitrator on one occasion, that he was aware of his obligation to appear in Court and chose to put his obligation as an arbitrator before his duties to his clients and to the Court.

4. That with regard to the Defendant David M. Weinfeld's obligation to appear on January 24, 1991, he intended not to appear before [the magistrate judge] on that date and simply chose to send an associate rather than appear for his own reasons.

5. That the Defendant David M. Weinfeld's actions in this matter were willfull, and were intentionally made.

7. In light of our disposition, we find it unnecessary to address Weinfeld's first and fifth amendment claims. In addition, because we decide that the magistrate judge exceeded his authority by conducting a show cause hearing that was the functional equivalent of a trial, we need not address Weinfeld's claim that FRCrP 42(b) or the due process clause obligated the magistrate judge to disqualify himself. We note, however, that the record does not reflect the level of personal animosity between the judicial officer and the litigant required for disqualification. See, for example, *Pennsylvania v. Local Union 542, International Union of Operating Engineers*, 552 F.2d 498, 514 (3d Cir.1977).

Court announced a procedural rule restricting the exercise of the judicial contempt power. The Court stated:

> [The least possible power] doctrine further requires that the trial judge first consider the feasibility of coercing testimony through the imposition of civil contempt. The judge should resort to criminal sanctions only after he determines, for good reason, that the civil remedy would be inappropriate.

384 U.S. at 371 n. 9, 86 S.Ct. at 1536 n. 9. See also *Young v. United States ex rel. Vuitton et Fils S.A.*, 481 U.S. 787, 801, 107 S.Ct. 2124, 2134, 95 L.Ed.2d 740 (1987).

We have not read *Shillitani* as establishing a rule that must be followed every time criminal contempt sanctions are imposed.[8] The "least possible power" doctrine on which the Court relied in *Shillitani* explicitly acknowledges that the appropriate sanction depends upon the court's reason for initiating contempt proceedings. *Shillitani*, 384 U.S. at 371, 86 S.Ct. at 1536 (Only "[t]he least possible power *adequate to the end proposed*" should be used in contempt cases.) (emphasis added). Significantly, the key distinction between civil and criminal contempt lies in the court's purpose. Civil contempt sanctions are intended to coerce or to compensate; criminal contempt sanctions to punish. See, for example, *Harrisburg Grand Jury*, 658 F.2d at 217. "Criminal contempt, more specifically, is reserved for those instances where the court must vindicate its authority." *Waste Conversion*, 893 F.2d at 612.

■ Nor do we interpret the "least possible power" doctrine to mean that courts must always attempt to coerce a contemnor before they may punish him or her. Otherwise, the court's ability to deal with situations where punishment is necessary to vindicate the court's authority would be greatly circumscribed. In *United States v. Wilson*, 421 U.S. 309, 95 S.Ct. 1802, 44 L.Ed.2d 186 (1975), for example, the Supreme Court upheld the summary imposition of criminal contempt sanctions against a witness who refused to testify. Implicitly assuming that criminal sanctions were appropriate, the Court instead focused on whether it was permissible to impose those sanctions in a summary manner. See also *In re Boyden*, 675 F.2d 643, 644 (5th Cir.1982) (not error to impose summary criminal contempt sanctions even though refusal to testify was also cognizable as civil contempt). In addition, the well-established practice of imposing both civil and criminal contempt for the same conduct contradicts the idea that courts must always attempt civil contempt sanctions before resorting to criminal contempt sanctions. When a party refuses to obey a court order, for example, civil sanctions may be used to coerce compliance and criminal sanctions to punish the disobedient conduct. See, for example, *In re Irving*, 600 F.2d 1027, 1031 (2d Cir.1979) ("In responding to a single contemptuous act, a court may well impose both civil and criminal sanctions—wishing to vindicate its authority and to compel compliance.").

■ We conclude therefore that the Court's admonition in *Shillitani* was intended to apply only when a judge initiates contempt proceedings for the purpose of coercing compliance with a court order, and not when the court's purpose is to punish past violations of its orders. Accord *United States v. Armstrong*, 781 F.2d 700, 705–

---

8. In *United States v. North*, 621 F.2d 1255 (3d Cir.1980) (in banc), we observed that the Eighth Circuit had responded to the Court's admonition in *Shillitani* by establishing a rule that requires the trial judge to consider the imposition of civil contempt and the record to reflect that the civil alternative was considered and rejected. See *United States v. Di Mauro*, 441 F.2d 428, 435 (8th Cir.1971). We declined to adopt that rule. 621 F.2d at 1261 n. 9. The issue reappeared in *In re Grand Jury Proceedings Harrisburg Grand Jury 79–1*, 658 F.2d 211 (3d Cir.1981) ("*Harrisburg Grand Jury*"), and *United States v. Pearce*, 792 F.2d 397 (3d Cir.1986); again we refused to adopt the *Di Mauro* rule. 621 F.2d at 217–18; 792 F.2d at 400 n. 3. In our most recent opinion to address the issue, *Waste Conversion, Inc. v. Rollins Environmental Services (N.J.) Inc.*, 893 F.2d 605 (3d Cir.1990) (in banc), we again declined to adopt the *Di Mauro* rule, but we did "urge the district courts in this Circuit, in giving effect to the principle of invoking only 'the least possible power to the end proposed,' to consider the imposition of civil contempt sanctions before resorting to criminal contempt." 893 F.2d at 612 (citation omitted). We affirm that principle again.

06 (9th Cir.1986). See also *Wilson,* 421 U.S. at 321 n. 2, 95 S.Ct. at 1809 n. 2 ("Although the use of civil contempt, as opposed to the more drastic criminal contempt, is usually to be preferred as a remedy, I am aware of no requirement that the less drastic sanction must be employed in all cases.") (Blackmun concurring). The propriety of using criminal contempt sanctions thus does not depend upon whether the contemnor could be coerced to comply with the court's order through civil sanctions; instead, as we recognized in *Waste Conversion,* the propriety of imposing criminal contempt sanctions depends upon whether punishment is necessary to vindicate the court's authority. 893 F.2d at 612.

■■■ The district judge's order makes clear that the purpose of imposing criminal contempt sanctions on Weinfeld was to punish him for his past failures to obey the magistrate judge's orders to appear, and not to coerce him to comply with an order in the future. The power to punish those who refuse to obey the court's order to appear is essential to maintenance of the court's authority. When the other requisites of criminal contempt are present, refusal to obey an order to appear may be punished through the imposition of criminal contempt sanctions. See *In re LaMarre,* 494 F.2d 753, 756 (6th Cir.1974).

B. *Is obstruction of the administration of justice an essential element of criminal contempt?*

■■■ Weinfeld contends that the district court erred by finding him in criminal contempt because there was no evidence that his conduct impeded the administra-

tion of justice. Weinfeld's argument necessarily assumes that obstruction of the judicial process is always an element of criminal contempt, but this court has not so held. Indeed, in *Waste Conversion,* we declined to decide whether a showing of obstruction was necessary to sustain the defendants' criminal contempt convictions, although we did state that the absence of obstruction "may have some significance in a given fact situation." 893 F.2d at 609.

The first subsection of the federal statute governing punishment of contempts, 18 U.S.C. § 401, expressly requires a showing of obstruction. The other two subsections do not mention the obstruction requirement.[9] In *United States v. Martin,* 525 F.2d 703 (2d Cir.1975), the Second Circuit declined to extend subsection 401(1)'s obstruction requirement to contempts prosecuted pursuant to subsection 401(3). The court reasoned that each subsection states "separate and independent grounds" for contempt adjudication, and concluded that the statute "cannot reasonably be read as incorporating into § 401(3) the requirements of § 401(1)." Id. at 709.

Following the lead of the Second Circuit, we decline to extend the obstruction requirement to this case. Although Weinfeld's conduct is best described by subsection 401(3), which concerns "[d]isobedience or resistance to" court orders,[10] our reason for declining to require a showing of obstruction differs from that given in *Martin.* The following, somewhat extended analysis of section 401's legislative history convinces us that the three subsections of the statute were intended to define the types of contumacious behavior that courts

---

**9.** In its entirety, section 401 states:

A court of the United States shall have power to punish by fine or imprisonment, at its discretion, such contempt of its authority, and none other, as—

(1) Misbehavior of any person in its presence or so near thereto as to obstruct the administration of justice;

(2) Misbehavior of any of its officers in their official transactions;

(3) Disobedience or resistance to its lawful writ, process, order, rule, decree, or command.

18 U.S.C. § 401 (1988).

**10.** Weinfeld's conduct does not fall within subsection 401(1) because it did not occur within the presence of the court. See, for example, *In re Chandler,* 906 F.2d 248, 250 (6th Cir.1990). Nor does it fall within subsection 401(2) because, as used in that subsection, "officers" of the court does not include attorneys. *Cammer v. United States,* 350 U.S. 399, 407–08, 76 S.Ct. 456, 460, 100 L.Ed. 474 (1956); *Waste Conversion,* 893 F.2d at 608.

could punish summarily [11] and that Congress intended the obstruction requirement to be a means of narrowing the circumstances in which contempts may be punished summarily. We therefore decline to require a showing of obstruction in this case because Weinfeld's conduct was not punished summarily.

The obstruction requirement was first codified in section 401's predecessor, the Act of March 2, 1831, 4 Stat 487 (the "1831 Act"). Congress's purpose in drafting the 1831 Act was to curb the power to punish contempt summarily. *In re McConnell*, 370 U.S. 230, 233, 82 S.Ct. 1288, 1291, 8 L.Ed.2d 434 (1962). A few years earlier, the Supreme Court had recognized the possibility that the summary contempt power might be abused and suggested that the proper remedy lay with Congress. The Court stated:

> Wherever power is lodged, it may be abused; but this forms no solid objection against its exercise. Confidence must be reposed somewhere; and if there should be an abuse, it will be a public grievance, for which a remedy may be applied by the legislature, and is not to be devised by courts of justice.

*Ex parte Kearny*, 20 U.S. (7 Wheaton) 38, 45, 5 L.Ed. 391 (1822).

Abuses did occur, culminating in the case of Luke Lawless, an attorney from Missouri who was summarily imprisoned and disbarred by United States District Judge James H. Peck for publishing an article criticizing an opinion written by the Judge. The House of Representatives impeached Judge Peck, but the Senate acquitted him by a vote of 22–21.[12] The next day, the House instructed its Committee on the Judiciary "to inquire into the expediency of defining, *by statute*, all offences which may be punished as contempts of the courts of the United States, and also to limit the punishment of the same." House Journal, 21st Cong, 2d Sess 245 (1831) (emphasis in original). See also 7 Cong Deb, 21st Cong, 2d Sess, cols 560–61 (Feb. 1, 1831). One month later, Congress passed the 1831 Act, which limited the federal courts' power "to inflict summary punishments" to the same three categories of contempt described in the current statute.[13]

The word "summary" was, "for some reason," omitted from the statute during the Revision of 1873. *Ex parte Savin*, 131 U.S. 267, 276, 9 S.Ct. 699, 701, 33 L.Ed. 150 (1889). That Revision was undertaken to codify the Statutes at Large and to arrange them into titles. See Report of the Commissioners Appointed Under Act of June

**11.** As applied to contempts, the meaning of the term "summary punishment" varies. Some cases use the term to refer to contempt proceedings in which the defendant is afforded notice and a hearing, but not a jury trial. See *Green v. United States*, 356 U.S. 165, 186–87, 78 S.Ct. 632, 644, 2 L.Ed.2d 672 (1958). See also Richard B. Kuhns, *The Summary Contempt Power: A Critique and a New Perspective*, 88 Yale L.J. 39, 42 & n. 7 (1978). Other cases use the term to refer to contempt proceedings in which the defendant does not even receive notice and a hearing. *Id.* Finally, the term may be used to distinguish contempts punished pursuant to Federal Rule of Criminal Procedure 42(a), which does not require notice, a hearing, or jury trial, from contempts punished pursuant to Rule 42(b), which requires a number of procedural safeguards. See note 14 for the full text of Rule 42. Thus, the word "summary" may refer to the lack of a jury trial, the lack of notice and hearing, or the lack of the other procedural protections described in Rule 42(b).

**12.** The following sources contain accounts of the dispute between Lawless and Judge Peck,

and of Judge Peck's subsequent impeachment and trial: Arthur J. Stansbury, *Report of the Trial of James H. Peck* (Hilliard, Gray, 1833); Walter Nelles & Carol Weiss King, *Contempt by Publication in the United States*, 28 Colum L Rev 401, 423–30 (1928); Ronald F. Goldfarb, *The Contempt Power* 21 (Colum U 1963).

**13.** Compare the three subsections of 18 U.S.C. § 401, set forth in note 9, with the 1831 Act, which similarly provided in pertinent part:

> That the power of the several courts of the United States to issue attachments and inflict summary punishments for contempts of court, shall not be construed to extend to any cases except the misbehaviour of any person or persons in the presence of the said courts, or so near thereto as to obstruct the administration of justice, the misbehaviour of any of the officers of the said courts in their official transactions, and the disobedience or resistance by any officer of the said courts, party, juror, witness, or any other person or persons, to any lawful writ, process, order, rule, decree or command of the said courts.

4 Stat 487.

27, 1866 to Provide for the Revision and Consolidation of the Statute Laws of the United States, S Misc Doc No 101, 40th Cong, 2d Sess (1868). The revisors made numerous mistakes, see Ralph H. Dwan & Ernest R. Feidler, *The Federal Statutes— Their History and Use*, 22 Minn L Rev 1008, 1013–14 (1938), some of which were later corrected by Thomas Jefferson Durant, "but his report is not available, and he clearly did not fully correct the earlier mistakes," Dan B. Dobbs, *Contempt of Court: A Survey*, 56 Cornell L Rev 183, 222 n. 153 (1971). Despite the omission, the Supreme Court continued to interpret the statute as specifying the circumstances in which courts may punish contempt summarily. *Savin*, 131 U.S. at 276, 9 S.Ct. at 701. See also *United States v. Barnett*, 376 U.S. 681, 687, 84 S.Ct. 984, 988, 12 L.Ed.2d 23 (1964) ("In 1831, ... Congress restricted the power of federal courts *to inflict summary punishment* for contempt.... These provisions are now codified in 18 U.S.C. § 401 without material difference.") (emphasis added); *Green*, 356 U.S. at 186–87, 78 S.Ct. at 644 ("Congress has consistently preserved *the summary nature of the contempt power* in the Act of 1831 and its statutory successors ...") (emphasis added). By continuing to interpret section 401 as limiting the power to punish contempt summarily, despite the omission of the word "summary," the Court evidently assumed that the omission was inadvertent. See Dobbs, 56 Cornell L Rev at 222 n. 153 (concluding that section 401 was probably intended to restrict the summary contempt power only).

Moreover, if the omission were not inadvertent, then section 401's language limits the court's contempt power to the three categories of behavior defined in the statute and "none other," 18 U.S.C. § 401. Such a limitation would be inconsistent with the well-established principle that the contempt power is inherent in the courts. As early as 1812, the Supreme Court stated:

Certain implied powers must necessarily result to our Courts of justice from the nature of their institution.... To fine for contempt—imprison for contumacy—

inforce the observance of order, [etc.] are powers which cannot be dispensed with in a Court, because they are necessary to the exercise of all others....

*United States v. Hudson & Goodwin*, 11 U.S. (7 Cranch) 32, 34, 3 L.Ed. 259 (1812). Since that early statement, the Court has consistently adhered to the view that the contempt power is inherent in the courts. See *Chambers v. NASCO, Inc.*, — U.S. ——, 111 S.Ct. 2123, 2132, 115 L.Ed.2d 27 (1991) (quoting *Hudson*); *Young*, 481 U.S. at 795, 107 S.Ct. at 2131 (power to punish contempts inherent in all courts) (quoting *Michaelson v. United States ex rel. Chicago, St. P., M. & O. Ry. Co.*, 266 U.S. 42, 65–66, 45 S.Ct. 18, 19–20, 69 L.Ed. 162 (1924)); *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 764, 100 S.Ct. 2455, 2463, 65 L.Ed.2d 488 (1980) (citing *Hudson*).

The Court has, however, upheld legislative efforts to regulate the sanctions that may be imposed for contempt and the procedures that must be followed when punishing contempt. For example, in *Ex parte Robinson*, 86 U.S. (19 Wall.) 505, 22 L.Ed. 205 (1873), the Court explained that the Judiciary Act of 1789, 1 Stat 83, which provided that the federal courts "shall have the power ... to punish by fine or imprisonment, at the discretion of said courts, all contempts of their authority in any cause or hearing before the same," imposed a limitation on the "modes of punishment" for contempt. 86 U.S. at 512. And in *Michaelson*, the Court held that Congress could require certain contempts to be tried by jury because the requirement of a jury trial "does not, in our opinion, invade the [inherent] powers of the courts as intended by the Constitution." 266 U.S. at 67, 45 S.Ct. at 20.

The Court has cautioned that although "[t]he manner in which the court's prosecution of contempt is exercised ... may be regulated by Congress ... 'the attributes which inhere in that power and are inseparable from it can neither be abrogated nor rendered practically inoperative.'" *Young*, 481 U.S. at 799, 107 S.Ct. at 2133 (quoting *Michaelson*, 266 U.S. at 66, 45 S.Ct. at 20). The power to define what

does and does not constitute contempt is an attribute that inheres in the contempt power. If Congress can exhaustively define the conduct that courts may punish as contempt, then the court's ability to vindicate its authority is completely dependent upon Congress, in violation of the principle that the contempt power "is regarded as essential to ensuring that the Judiciary has a means to vindicate its own authority without complete dependence on other Branches." *Young*, 481 U.S. at 796, 107 S.Ct. at 2131–32. Therefore, interpreting section 401 as an exhaustive definition of the conduct courts may punish as contempt, rather than as a limitation on the types of contempts that may be punished summarily, is inconsistent with the inherent nature of the contempt power because such an interpretation allows *Congress* to declare what constitutes contempt. The inherent nature of the contempt power supports our conclusion that section 401's obstruction requirement applies only to contempts that are punished summarily.

Supreme Court case law also supports our conclusion that the obstruction requirement is not an element of all contempts, but merely a method of narrowing the circumstances in which contempt may be punished summarily. See *Young*, 481 U.S. at 798, 107 S.Ct. at 2132 (making same point about distinction between in-court and out-of-court contempts). The Court has long required a showing of obstruction as a way to narrow the summary contempt power. *In re Oliver*, 333 U.S. 257, 275, 68 S.Ct. 499, 508, 92 L.Ed. 682 (1948); *Cooke v. United States*, 267 U.S. 517, 536, 45 S.Ct. 390, 395, 69 L.Ed. 767 (1925). See also *Vaughn v. City of Flint*, 752 F.2d 1160, 1167 (6th Cir.1985) (explaining obstruction requirement as limitation on summary contempt power). A comparison of two particular Supreme Court cases illustrates that the obstruction requirement is meant to determine when contempt may be punished summarily. In *Harris v. United States*, 382 U.S. 162, 86 S.Ct. 352, 15 L.Ed.2d 240 (1965), the Supreme Court held that summary punishment pursuant to Federal Rule of Criminal Procedure 42(a) was inappropriate.[14] In contrast, the Court upheld the imposition of summary punishment pursuant to Rule 42(a) in *United States v. Wilson*, 421 U.S. 309, 95 S.Ct. 1802, 44 L.Ed.2d 186 (1975). The Court explained that the "crucial difference between the cases ... is that *Harris* [unlike *Wilson*] did not deal with a refusal to testify which *obstructed* an ongoing trial." 421 U.S. at 318, 95 S.Ct. at 1807–08 (emphasis added).[15]

---

**14.** Rule 42 sets forth the procedures for punishing criminal contempts. The Rule was intended to restate the case law existing at the time of its adoption. See *Offutt v. United States*, 348 U.S. 11, 13–14, 75 S.Ct. 11, 13, 99 L.Ed. 11 (1954). Rule 42(a) provides that contempts committed in the presence of the court may be punished summarily. Punishment of all other contempts must be accompanied by the procedural safeguards described in Rule 42(b). The Rule states:

(a) Summary Disposition. A criminal contempt may be punished summarily if the judge certifies that the judge saw or heard the conduct constituting the contempt and that it was committed in the actual presence of the court. The order of contempt shall recite the facts and shall be signed by the judge and entered of record.

(b) Disposition Upon Notice and Hearing. A criminal contempt except as provided in subdivision (a) of this rule shall be prosecuted on notice. The notice shall state the time and place of hearing, allowing a reasonable time for the preparation of the defense, and shall state the essential facts constituting the criminal contempt charged and describe it as such.

The notice shall be given orally by the judge in open court in the presence of the defendant or, on application of the United States attorney or of an attorney appointed by the court for that purpose, by an order to show cause or an order of arrest. The defendant is entitled to a trial by jury in any case in which an act of Congress so provides. The defendant is entitled to admission to bail as provided in these rules. If the contempt charged involves disrespect to or criticism of a judge, that judge is disqualified from presiding at the trial or hearing except with the defendant's consent. Upon a verdict or finding of guilt the court shall enter an order fixing the punishment.

**15.** Weinfeld cites four cases to support his claim that there can be no conviction for criminal contempt absent a showing of obstruction. None of those cases supports his cause, however. In the first two, the court referred to the obstruction requirement when discussing the summary punishment of contumacious behavior. See *United States v. Thoreen*, 653 F.2d 1332, 1339 (9th Cir.1981); *Gordon v. United States*, 592 F.2d 1215, 1217 (1st Cir.1979). Although the third case apparently did not involve

Because of the danger that the summary contempt power will be abused, both Congress and the Court have narrowed its scope by requiring a showing of obstruction before contempt may be punished summarily. "[A] summary contempt proceeding dispenses with the procedural safeguards ordinarily deemed essential to fair criminal trials," *Jessup v. Clark*, 490 F.2d 1068, 1071 (3d Cir.1973). It combines "the otherwise inconsistent functions of prosecutor, jury, and judge" in one individual and "dispenses with the usual guarantees of notice and hearing." *In re Gustafson*, 650 F.2d 1017, 1022 (9th Cir.1981) (en banc). Weinfeld was not punished summarily and thus these dangers are not present here. Therefore, we hold that the government was not required to prove that Weinfeld obstructed the administration of justice.[16]

## III. PROCEDURES FOR PUNISHING CONTEMPTS COMMITTED IN PROCEEDINGS BEFORE MAGISTRATE JUDGES [17]

### A. *The Federal Magistrates Act*

The Federal Magistrates Act describes the jurisdiction of magistrate judges and explains the procedures for reviewing their decisions. Because several provisions of the Act are relevant to our decision, we begin with a general description of the statute and its history.

After extensive hearings, Congress enacted the Federal Magistrates Act of 1968, Pub.L.No. 90–578, 82 Stat 1107, codified as amended at 28 U.S.C. §§ 604, 631–639 (1988 & West Supp.1991) and 18 U.S.C. §§ 3060, 3401–3402 (1988 & West Supp.1991) (the "1968 Act"), to create a system to replace the old United States Commissioner system. The 1968 Act granted magistrates the authority to perform three basic types of duties: the duties formerly exercised by United States Commissioners, which largely consisted of initial proceedings in federal criminal cases; "trial and disposition" of "minor" criminal offenses,[18] provided the defendant gave written consent; and "such additional duties as are not inconsistent with the Constitution and laws of the United States," including, but not limited to, serving as a special master in certain cases, conducting pretrial conferences and hearings in civil and criminal actions, and reviewing and reporting on habeas corpus petitions. The 1968 Act included a provision that expressly addressed the subject of contempts committed in proceedings before magistrates. Section 636(d) of the 1968 Act, since relocated to 28 U.S.C. § 636(e), not only describes the conduct constituting contempt,[19] but also describes

summary punishment, the court referred to the obstruction requirement when quoting subsection 401(1) and thus did not decide whether to apply that requirement to contempts described in subsection 401(3). See *In re Kirk*, 641 F.2d 684, 687 (9th Cir.1981). The remaining case involves an interpretation of a New Jersey statute concerning summary punishment. See *Kerr Steamship Co., Inc. v. Westhoff*, 204 N.J.Super. 300, 498 A.2d 793 (1985).

**16.** The imposition of all criminal contempt sanctions is restricted to "those instances where the court must vindicate its authority." *Waste Conversion*, 893 F.2d at 612. The court may consider the absence of obstruction, id. at 609, as a factor in determining whether criminal contempt sanctions are necessary to vindicate its authority. We can imagine instances in which criminal contempt sanctions are necessary to vindicate the court's authority, although there is no actual obstruction of the administration of justice. For example, a lawyer's repeated failure to appear before the court when ordered to do so dilutes the court's authority, even though it may not impede the court from its business on any specific occasion.

**17.** As we explain in note 19, we use the phrase "contempts committed in proceedings before a magistrate judge" to encompass contempts committed in the magistrate judge's presence, as well as out-of-court contempts related to proceedings before a magistrate judge.

**18.** A the time, "minor offenses" were defined as "misdemeanors punishable under the laws of the United States, the penalty for which does not exceed imprisonment for a period of one year, or a fine of not more than $1,000, or both." 82 Stat 1116, formerly codified at 18 U.S.C. § 3401(f) (1964 Supp IV).

**19.** Section 636(e) defines contempt as follows:
In a proceeding before a magistrate, any of the following acts or conduct shall constitute a contempt of the district court for the district wherein the magistrate is sitting: (1) disobedience or resistance to any lawful order, process, or writ; (2) misbehavior at a hearing

the procedures to be followed in punishing the criminal contemnor or coercing the civil contemnor.[20]

As confidence in the magistrate system increased, Congress gradually expanded the scope of the magistrate's authority through a series of amendments. In 1976, Congress "clarif[ied] and further define[d] the additional duties which may be assigned to a United States Magistrate," H.R.Rep. No. 94–1609, 98th Cong, 2d Sess 2 in 1976 U.S.Code Cong. & Admin.News, 6162. The Magistrates Act of 1976, Pub.L. No. 94–577, 90 Stat 2729, now codified at 28 U.S.C. 636(b), states that magistrates may be designated to serve as special masters in any civil case upon the consent of the parties; hear and determine any pretrial matter,[21] except for eight categories of "dispositive" pretrial matters; and conduct hearings and recommend dispositions[22] with regard to the eight excepted matters.

In 1979, Congress significantly enlarged the magistrate's jurisdiction over civil and criminal trials. The Federal Magistrates Act of 1979, Pub.L. No. 96–82, 93 Stat 643–647, added a new subsection (c) to 28 U.S.C. § 636 and revised 18 U.S.C. §§ 3401 and 3402. The new section 636(c) authorizes magistrates to preside at and enter final judgment in civil trials, including those tried before a jury, upon the written consent of the parties and the special designation of the district court. 28 U.S.C. § 636(c)(1). Unsuccessful civil litigants are entitled to appeal directly to the court of appeals, 28 U.S.C. § 636(c)(3), or, provided the parties have consented, to the district court, 28 U.S.C. § 636(c)(4). The revised 18 U.S.C. § 3401 authorizes magistrates, with the written consent of the defendant and by the special designation of the district court, to conduct both bench and jury trials and to impose sentence on any misdemeanor charge.[23] Convicted defendants may take an appeal as of right to the district court. 18 U.S.C. § 3402. The addition of these provisions naturally increased the incidence of cases in which contempts committed in proceedings before a magistrate judge would occur.

## B. The punishment of contempts committed in proceedings before magistrate judges

### 1. The certification process described in section 636(e)

 Section 636(e) of the Federal Magistrates Act provides that when a person has committed an act which may constitute a contempt in a proceeding before a magistrate judge,

> the magistrate shall forthwith certify the facts to a judge of the district court and may serve or cause to be served upon any person whose behavior is brought into question under this section an order requiring such person to appear before a judge of that court upon a day certain to show cause why he should not be adjudged in contempt by reason of the facts so certified. A judge of the district

---

or other proceeding, or so near the place thereof as to obstruct the same; (3) failure to produce, after having been order to do so, any pertinent document; (4) refusal to appear after having been subpenaed or, upon appearing, refusal to take the oath or affirmation as a witness, or, having taken the oath or affirmation, refusal to be examined according to law; or (5) any other act or conduct which if committed before a judge of the district court would constitute contempt of such court.

In keeping with this definition, the phrase "contempts committed in a proceeding before a magistrate judge," as used in this opinion, is not limited to those contempts committed in the magistrate judge's presence, but also includes out-of-court contempts related to proceedings before the magistrate judge.

**20.** The portion of the provision that describes the procedures to be followed in punishing contempts committed in proceedings before magistrate judges is set forth at pages 897–98.

**21.** The magistrate's determination of these matters is subject to reconsideration by the district court on a showing that "the magistrate's order is clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A).

**22.** If a party objects to the magistrate's recommendation, the district court is to "make a de novo determination" of the matter. 28 U.S.C. § 636(b)(1)(C).

**23.** An offense is classified as a misdemeanor if the maximum term of imprisonment authorized is one year or less. 18 U.S.C. § 3559 (West Supp.1991).

court shall thereupon, in a summary manner, hear the evidence as to the act or conduct complained of and, if it is such to warrant punishment, punish such person in the same manner and to the same extent as for a contempt committed before a judge of the court, or commit such person upon the conditions applicable in the case of defiance of the process of the district court or misconduct in the presence of a judge of that court.

Our analysis begins with the language of the statute. Section 636(e) appears to contemplate a procedure in which the magistrate judge's certification of facts merely notifies the district court judge of the alleged contempt.[24] The statute clearly specifies that the order to show cause shall require the alleged contemnor to appear before a judge of the district court, who hears the evidence, albeit "in a summary manner," and decides whether to impose punishment. Thus, under the statute, the magistrate judge's certification of facts seems designed to serve the function of a charging instrument or pleading for a trial to be held before the district judge.

If our preliminary interpretation of Section 636(e) is correct, both the magistrate judge and the district judge violated the statute's commands in this case. The magistrate judge, having ordered Weinfeld to appear before him to "show cause," conducted a hearing at which the government prosecuted Weinfeld and both parties presented evidence. He then issued an order declaring that Weinfeld had willfully disregarded the court's orders, concluding

that "the requisite showing of intent" had been made, and ordering that Weinfeld be certified in criminal contempt pursuant to 28 U.S.C. § 636. Only then did he refer the matter to a judge of the district court. In effect, the proceeding before the magistrate judge was equivalent to a contempt trial.

The district judge began the first hearing before him by stating, "[The magistrate judge] had a hearing in the matter and found you in contempt. He made certain findings of fact and conclusions of law and referred it to me for disposition of an appropriate fine and/or sanction." At the second hearing, the district judge incorporated the magistrate judge's findings as "a de novo record in front of [him]," agreed to receive further evidence, and stated, "I am entitled to adopt [the magistrate judge's] findings, to adopt them in a modified basis, to expand upon them or do such things as I see fit based upon my de novo review of the record which I have made." He then issued an order closely tracking the order issued by the magistrate judge. See note 6.

The district judge's statements and actions indicate that he treated the magistrate judge's order as a "proposed finding and recommendation" pursuant to section 636(b)(1)(B), rather than as a certification pursuant to section 636(e). Under section 636(b)(1)(B), a magistrate judge conducts hearings on dispositive motions and then submits proposed findings of fact and recommendations for disposition to the district

---

**24.** Authorization for the actions of the magistrate judge and the district judge in this case may *not* be found in provisions of the Act other than section 636(e). Section 636(b), which authorizes magistrate judges to handle pretrial matters, does not apply because, as we explain at page 903, the proceeding before the magistrate judge in this case was equivalent to a trial. Section 3401, which authorizes magistrate judges to conduct trials on misdemeanor charges, does not apply because, as we explain at page 903, Weinfeld did not consent to be tried by the magistrate judge.

In contrast, section 636(e) specifically addresses the issue of contempts committed in proceedings before magistrate judges. We therefore agree with *Proctor v. State Government of North Carolina,* 830 F.2d 514 (4th Cir.

1987), in which the Fourth Circuit stated that "Congress, in enacting § 636(e), intended to create a distinct procedure, apart from that normally applicable to proceedings under either § 636(b) or § 636(c)," id. at 517. We also note that although Congress has twice expanded the jurisdiction of magistrate judges since section 636(e) was originally enacted, see page 902, the only change made to section 636(e) occurred when Congress moved the provision from one subsection to another after adding subsection (c) in 1976. Because Congress retained section 636(e) when it added the amendments expanding the jurisdiction of magistrate judges, we conclude that those amendments were not intended to alter the manner of adjudicating contempts committed in proceedings before magistrate judges.

judge. Section 636(b)(1)(C) provides that when reviewing findings and recommendations made by a magistrate judge pursuant to section 636(b)(1)(B), the district judge "shall make a de novo determination," "may accept, reject, or modify" the findings or recommendations made by the magistrate, and "may receive further evidence."

Whereas section 636(b)(1)(C) requires the district judge to make a de novo *determination*, section 636(e) requires the district judge to conduct a de novo *hearing*. In *United States v. Raddatz*, 447 U.S. 667, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980), the Supreme Court distinguished a de novo determination from a de novo hearing. A de novo determination requires the district judge to "consider the record which has been developed before the magistrate and make his own determination on the basis of that record, without being bound to adopt the findings and conclusions of the magistrate." H.R.Rep. No. 94–1609, 94th Cong, 2d Sess 3 in 1976 U.S.Code Cong. & Admin.News 6163 (quoted in *Raddatz*, 447 U.S. at 675, 100 S.Ct. at 2393–94). In contrast, a de novo hearing entails a new proceeding at which the decision is based solely on the evidence freshly presented at the new proceeding. See *Raddatz*, 447 U.S. at 673–76, 100 S.Ct. at 2411–12. See also *Matter of Hipp, Inc.*, 895 F.2d 1503, 1519 (5th Cir.1990) (comparing "tru[e] de novo hearing" to de novo review of bankruptcy court's decision under Bankruptcy Rules 9020 and 9033(d)). In other words, when making a de novo determination, the district court reviews the record before the magistrate judge, but owes no deference to the magistrate judge's findings and conclusions. When holding a de novo hearing, however, the district court acts as a trial court. Because section 636(e) specifies that the district judge "shall hear the evidence," albeit "in a summary manner," [25] thereby indicating that a de novo hearing is required, see *Raddatz*, 447 U.S. at 676, 100 S.Ct. at 2412 (explaining difference between "determination" and "hearing"), the district judge's de novo determination was not sufficient to comply with this requirement, although it would have satisfied section 636(b)(1)(C).[26]

The legislative history supports this interpretation of section 636(e). A 1966 Senate bill, the predecessor of the bill eventually enacted, would have permitted magistrates to punish contempts committed in their presence. The Committee on the Administration of Criminal Law of the Judicial Conference of the United States expressed "serious doubts" about the proposed provision and recommended changing it "to allow the magistrate to certify the facts of such act or conduct to the district court for appropriate action by that court." S.Rep. No. 371, 90th Cong, 1st Sess 27 (1967). The present language of section 636(e), then designated section 636(d), was intended to adopt the Committee's suggestion. *Id.* The corresponding Senate Report explained that the provision "empowers the *district court to which the magistrate has certified the facts of an alleged contempt* to try in a summary manner and punish or commit one whose conduct the court finds warrants punishment or commitment," and

---

**25.** We explained in note 11 that the courts have used the word "summary" to refer to (1) the lack of a jury trial; (2) the lack of notice and hearing; and (3) the lack of other procedural safeguards described in FRCrP 42(b). Congress did not specify which meaning it intended by the phrase "in a summary manner" when it enacted section 636(e). Congress did state, however, that the district judge "shall hear the evidence," thereby indicating that Congress contemplated that the district judge would hold a hearing at which evidence would be presented. See Kent Sinclair, Jr., *Practice Before Federal Magistrates* § 2.06 at 2–23 (Matthew Bender, 1991) ("[I]t is clear that the judge must 'hear the evidence as to the act complained of' ..."); id.

at 2–25 ("The present contempt structure requires that in each instance the matter be brought before the district judge."). We conclude that Congress used the word "summary" to indicate that a jury trial was not required. In addition to giving effect to the statutory language requiring the district judge to hear evidence, this interpretation is consistent with the practice of narrowing the class of cases in which contempts may be punished absent the procedural safeguards described in Rule 42(b). See page 900.

**26.** The district judge's offer to allow Weinfeld to supplement the record is also consistent with section 636(b)(1)(C), which allows the district judge to "receive further evidence."

that "such court [shall] hear evidence, adjudicate, and punish" contempts committed before the magistrate. Id.

As the Fourth Circuit has noted, the final language of 636(e) is nearly identical to that of former 11 U.S.C. § 69(b), the provision that described the manner in which contempts committed before bankruptcy referees should be handled prior to the enactment of the Bankruptcy Reform Act of 1978. *Proctor v. State Government of North Carolina*, 830 F.2d 514, 519 (4th Cir.1987). "Congress was clearly aware of the similarity between § 636(e) and § 69 when it enacted § 636, for the Senate Report on § 636 explicitly noted that the acts which were punishable as contempts under § 636 were the same as those specified in 11 U.S.C. § 69." *Id.* at 520, citing S.Rep. No. 371, 90th Cong, 1st Sess 28 (1967). Because Congress patterned section 636(e) after the bankruptcy provision, we look to cases interpreting that provision for instruction.

These cases support our construction of section 636(e). The practice regarding civil contempts committed before a bankruptcy referee varied, see *Proctor*, 830 F.2d at 520–21, but in cases involving criminal contempts, the referee's certificate of facts was merely the means whereby the district judge was informed of the alleged contempt. See *O'Hagan v. Blythe*, 354 F.2d 83, 84–85 (2d Cir.1965); *In re McIntosh*, 73 F.2d 908, 910 (9th Cir.1934). See also James W. Moore, ed, 2 *Collier on Bankruptcy* ¶ 41.09 at 1599 (Matthew Bender, 14th ed 1978); Harold Remington, 9 *A Treatise on the Bankruptcy Law of the United States* § 3547 at 173–74 (Lawyers Co-op, 6th ed 1955). The certificate thus functioned simply as an indictment or charging instrument for the subsequent trial before the district court, rather than as

an order to be reviewed by that court. See *Proctor*, 830 F.2d at 520.

We have uncovered only two cases in which a determination regarding the respective roles of the magistrate judge and the district judge in the punishment of criminal contempts committed in proceedings before a magistrate judge was necessary to the decision.[27] Both support our interpretation of section 636(e).

In *United States v. Ritte*, 558 F.2d 926 (9th Cir.1977) (per curiam), the magistrate judge entered an order finding Ritte in contempt. The Ninth Circuit summarily held that the order was invalid because the magistrate judge did not have jurisdiction. The court explained: "We must vacate the contempt order because 28 U.S.C. § 636(d) [now found at 28 U.S.C. § 636(e) ] requires that contemptuous acts committed in the presence of a magistrate or related to proceedings before a magistrate must be referred to a district judge for adjudication." 558 F.2d at 927.

The second case, *In re Kitterman*, 696 F.Supp. 1366 (D.Nev.1988), involved a federal public defender, Kitterman, who was appointed to represent a defendant in proceedings before a magistrate judge. When Kitterman failed to appear at the hearing, the magistrate judge issued an order directing Kitterman to come before her and show cause why he should not be held in contempt for his failure to appear. Kitterman moved to quash, arguing that under section 636(e), the magistrate judge was without jurisdiction to preside over the contempt hearing. The district judge agreed, reasoning that

[u]nder § 636(e) a federal district judge adjudicates and punishes contempts which occur before a United States magistrate. The magistrate, however, initiates the process by certifying to the dis-

---

27. A number of cases contain dicta to the effect that only district judges may adjudicate contempts committed in proceedings before magistrate judges. For example, the Seventh Circuit has stated:

According to section 636(e), if an individual commits an act constituting contempt of court, the magistrate must certify the facts of the incident to a district judge. The judge,

after holding a hearing and evaluating the allegedly contemptuous conduct, may determine the nature and severity of appropriate punishment, if indicated.

*Geras v. Lafayette Display Fixtures, Inc.,* 742 F.2d 1037, 1044 (7th Cir.1984). See also *Pacemaker Diagnostic Clinic of America, Inc. v. Instromedix, Inc.,* 725 F.2d 537, 545 (9th Cir.1984) (en banc).

trict court the facts which may constitute contempt and by issuing an order that the person whose behavior is at issue show cause before the district judge why he should not be adjudged in contempt. The Ninth Circuit Court of Appeals held in *United State v. Ritte,* 558 F.2d 926 (9th Cir.1977), that contemptuous acts committed in the presence of a magistrate must be referred to a district judge for adjudication and that the magistrate is without jurisdiction to adjudicate the person who committed the acts in contempt.

Under 28 U.S.C. § 636(e), then, the Magistrate is without jurisdiction to entertain the contempt hearing contemplated in the Order to Show Cause.

696 F.Supp. at 1368–69 (some citations omitted).

After the district judge granted Kitterman's motion to quash, the magistrate judge issued another order to show cause, but this one instructed Kitterman to appear before her to show cause why she should not certify the facts of the matter to the district judge pursuant to section 636(e). The district judge upheld the second order.

*Ritte* and *Kitterman* thus instruct that section 636(e) prohibits magistrate judges from adjudicating criminal contempts committed in proceedings before them. Moreover, *Kitterman* conforms to our interpretation of the respective roles of the magistrate judge and the district judge under section 636(e). The district judge recognized that when determining whether to proceed with certification

[t]he Magistrate will not be determining whether Kitterman is guilty of criminal contempt. She will not be acting as an impartial fact-finder. Instead, she simply will be investigating Kitterman's explanation for his failure to appear in order to decide whether further contempt proceedings are warranted.

*Kitterman,* 696 F.Supp. at 1372. Upon certification, Kitterman would be prosecuted before the district judge. Id. at 1371. The district judge characterized the difference between the certification hearing and a show cause hearing before the district judge as "much like the difference between pre-indictment and post-indictment investigations." Id.

We also agree with *Kitterman* that the "additional duties" clause contained in section 636(b)(3) could be construed as authorizing magistrate judges to hold hearings in order to determine whether to initiate the certification process described in section 636(e). But in this case, the magistrate judge conducted a hearing at which the government prosecuted Weinfeld, and then issued an order that included the legal conclusion that "the requisite showing of intent" had been made. The district judge compounded the magistrate judge's error by relying on the record of the proceeding before the magistrate judge instead of holding a de novo hearing. Thus, the proceeding before the magistrate judge was the functional equivalent of a contempt trial, rather than the "pre-indictment investigation" contemplated in *Kitterman.*

Our interpretation of section 636(e) also finds support in the Fourth Circuit's discussion of *civil* contempts committed in proceedings before a magistrate judge. In *Proctor v. State Government of North Carolina,* 830 F.2d 514 (4th Cir.1987), plaintiff Janet Proctor argued that the factual findings contained in the magistrate judge's certification of contempt should be reviewed under the same standard of review applied to a decision rendered by a magistrate judge in any other section 636(c) proceeding. Ordinarily, in an appeal from a decision rendered by a magistrate judge pursuant to section 636(c), the magistrate judge's findings of fact are reviewed only to the extent of determining whether they are clearly erroneous. The Fourth Circuit rejected Proctor's argument because it reasoned that § 636(e) provides a different review procedure for contempts. The court stated:

We decline to adopt Proctor's interpretation of the district court's responsibilities under § 636(e), however, for it is contrary to the plain language of that section, which explicitly states that the district judge shall hear the evidence regarding the act in question. We find

instead that Congress, in enacting § 636(e), intended to create a distinct procedure, apart from that normally applicable to proceedings under either § 636(b) or § 636(c).

830 F.2d at 517. Therefore, the court held that it was error to adjudicate and review a civil contempt committed in a proceeding before a magistrate judge under the provisions of 28 U.S.C. § 636(c). Id. at 519.

The *Proctor* court decided that section 636(e) requires a hearing before the district judge. It then turned to the task of defining the type of hearing required. After reviewing the language of section 636(e) and the sparse legislative history regarding this particular issue, the court noted the dearth of case law addressing the issue. Accordingly, the court looked to the case law interpreting the almost identical provision that was formerly included in the bankruptcy code. See page 905. The court then adopted the following rule:

> Th[e] certificate of facts forwarded by the magistrate to the district court shall be considered the statement of a prima facie case. Thus, if there is nothing else appearing before the district court and the certified facts, if true, will support a violation, then the district court may, if it deems the burden of persuasion to have been satisfied, find a party in contempt.... As has been recognized already in this opinion, there is no set procedure establishing when a district court must hear additional evidence in a [civil] contempt proceeding. We conclude ... that the better practice is to allow any party the opportunity to introduce evidence upon request.

830 F.2d at 521–22 (citations omitted).

Our interpretation of section 636(e) is consistent with *Proctor*'s in one aspect: we agree that contempts committed in proceedings before a magistrate judge must be adjudicated pursuant to section 636(e) and not some other provision of the Act. We disagree with *Proctor*, however, because it permits the district judge to act as he or she would in a section 636(c) proceeding, except that the district judge is required, rather than merely permitted, to

hear additional evidence upon a party's request. In other words, *Proctor* contemplates that on remand the district judge will review the magistrate judge's certification along with any additional evidence, rather than try the contempt de novo.

We cannot follow that course in this case for two reasons. First, as we have already explained, section 636(e) prohibits magistrate judges from trying contempts committed in proceedings before them. Second, as we explain in the next subsection, Weinfeld did not consent to be tried before a magistrate judge.

**2. The consent requirement in 18 USC § 3401(b)**

The portion of the Act authorizing magistrate judges to conduct misdemeanor trials, 18 U.S.C. § 3401(b), explicitly provides that "the magistrate's criminal trial jurisdiction depends on the defendant's specific, written consent." *Peretz v. United States,* — U.S. ——, 111 S.Ct. 2661, 2667, 115 L.Ed.2d 808 (1991); *Gomez v. United States,* 490 U.S. 858, 870–71, 109 S.Ct. 2237, 2245, 104 L.Ed.2d 923 (1989). Therefore, even if section 636(e) did not preclude magistrate judges from trying contempts committed in proceedings before them, section 3401(b) precluded the magistrate judge from trying this contempt because Weinfeld did not consent.

Section 3401(b) states:
> Any person charged with a misdemeanor may elect, however, to be tried before a judge of the district court for the district in which the offense was committed. The magistrate shall carefully explain to the defendant that he has a right to trial, judgment, and sentencing by a judge of the district court and that he may have a right to trial by jury before a district judge or magistrate. *The magistrate shall not proceed to try the case unless the defendant, after such explanation, files a written consent to be tried before the magistrate that specifically waives trial, judgment, and sentencing by a judge of the district court.*

18 U.S.C. § 3401(b) (emphasis added). Weinfeld did not consent to be tried by the magistrate judge within the meaning of the

Act, even though he did appear at the show cause hearing before the magistrate judge without objection. Although failure to raise an objection in the first instance ordinarily waives the right to raise the matter on appeal, Congress has specified that criminal defendants must give their express, written consent to trial before a magistrate judge. Therefore, cases inferring waiver of rights from a criminal defendant's failure to object do not apply here. To hold that a criminal defendant may waive the Act's consent requirement implicitly is to ignore Congress's insistence upon explicit, written consent.[28]

### 3. Summary

In conclusion, we hold that by conducting what was in effect a trial of the contempt charges against Weinfeld without Weinfeld's consent, the magistrate judge exceeded his authority under the Federal Magistrates Act.[29] We also hold that the district court was required to try the contempt de novo, albeit in a summary manner, see note 25, and that it erred by failing to do so. Therefore, Weinfeld's convictions must be reversed. Accordingly, we now examine the sufficiency of the evidence against Weinfeld in order to determine whether we should dismiss the case or remand it to the district court for further proceedings.

### IV. SUFFICIENCY OF THE EVIDENCE

Willfulness is an element of criminal contempt that must be proved beyond a reasonable doubt. *Waste Conversion*, 893 F.2d at 609; *Pennsylvania v. Local Union 542, International Union of Operating Engineers*, 552 F.2d 498, 510 (3d Cir.1977). The mere failure to comply with a court's order, without more, is not sufficient to sustain a conviction for contempt because "the crime of criminal contempt requires a specific intent to consciously disregard an order of the court." *Waste Conversion*, 893 F.2d at 610 (citations omitted).

Weinfeld claims that the government failed to present sufficient evidence that he acted willfully. Because the double jeopardy clause prohibits retrial when the government has failed to present minimally sufficient evidence at the first trial, *Lockhart v. Nelson*, 488 U.S. 33, 109 S.Ct. 285, 290, 102 L.Ed.2d 265 (1988); *Burks v. United States*, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978), we consider the sufficiency of the proof of willfulness in order to determine whether we should dismiss the case against Weinfeld or remand it for further proceedings consistent with this opinion.

Our opinion in *Waste Conversion* frames the issue. There two attorneys advised their client not to respond to a deposition subpoena. Although the attorneys explained that they thought their client's appearance was not required because they had requested a stay of discovery in their motion to dismiss, the district court never-

---

**28.** Our conclusion that Weinfeld did not satisfy the Act's consent requirement is supported by a number of cases construing 28 U.S.C. § 636(c), the portion of the Act authorizing magistrate judges to conduct civil trials upon the parties' written consent. See, for example, *Clark v. Poulton*, 914 F.2d 1426, 1431 (10th Cir.1990) (consent must be explicit and cannot be inferred from the conduct of the parties). Accord *Fowler v. United States*, 899 F.2d 1088, 1092 (11th Cir.1990); *In re San Vicente Medical Partners, Ltd.*, 865 F.2d 1128, 1130 (9th Cir.1989). But see *Archie v. Christian*, 808 F.2d 1132 (5th Cir.1987) (en banc).

**29.** Our strict construction of the Act's consent requirement is not inconsistent with our opinion in *Government of the Virgin Islands v. Williams*, 892 F.2d 305 (3d Cir.1989), cert. denied, 495 U.S. 949, 110 S.Ct. 2211, 109 L.Ed.2d 537 (1990). In that case, our task was to determine whether the "additional duties" clause of the Act authorizes a magistrate judge to preside at jury selection in a felony trial when the defendant does not object. Unlike § 3401(b), the "additional duties" clause contains no requirement that the defendant consent to the exercise of the magistrate judge's jurisdiction. Moreover, our examination of section 3401(b)'s consent requirement, which Weinfeld does not raise, is consistent with our approach in *Williams* and other cases. See *Williams*, 892 F.2d at 309-10 (contemporaneous objection rule does not apply when party claims magistrate judge exceeded authority under the Act). See also *In re Morrissey*, 717 F.2d 100, 103 (3d Cir. 1983) (treating improper reference to magistrate judge as a jurisdictional defect to be noticed by court on its own motion).

theless convicted them of criminal contempt. In reviewing their convictions, we began by citing with approval *In re Brown*, 454 F.2d 999 (D.C.Cir.1971), and *United States v. Greyhound Corp.*, 508 F.2d 529 (7th Cir.1974). In *Brown*, the D.C.Circuit reasoned:

> Knowledge that one's act is wrongful and a purpose to nevertheless do the act are prerequisites to criminal contempt, as to most other crimes. Good faith pursuit of a plausible though mistaken alternative is antithetical to contumacious intent, however unimportant it may be in the context of civil contempt.

454 F.2d at 1007 (footnotes omitted). In *Greyhound*, the Seventh Circuit, relying upon *Brown*, stated:

> Willfulness, for the purpose of criminal contempt, does not exist where there is a "[g]ood faith pursuit of a plausible though mistaken alternative." To provide a defense to criminal contempt, the mistaken construction must be one which was adopted in good faith and which, given the background and purpose of the order, is plausible.

508 F.2d at 532 (quoting *Brown*, 454 F.2d at 1007).

In *Waste Conversion*, we explained that although the attorneys did not obey the Federal Rules of Civil Procedure to the letter, their conduct was consistent with the spirit of the Rules, and did not place them at an advantage vis-à-vis opposing counsel. 893 F.2d at 611. Moreover, we found their reliance on the erroneous practice of requesting a stay of discovery by filing a motion to dismiss, albeit mistaken, to be plausible. Applying the teachings of *Brown* and *Greyhound*, we concluded that their conduct did not establish willfulness to disobey the court's order beyond a reasonable doubt and, accordingly, we reversed their convictions.

■ In this case, the district court based its conviction of Weinfeld on two instances of failure to appear before the magistrate judge.[30] The first incident oc- curred on November 14, 1990. As we explained at page 892, Weinfeld received an order specifically directing him and his associate, Donald Burak, to appear before the magistrate judge for a scheduling conference on that date. Both he and Burak immediately informed the magistrate judge by letter of Weinfeld's inability to attend and of his intention to send Burak as a substitute. The government produced no evidence that as of November 14, 1990, Weinfeld had any indication that this response was not acceptable, or that he had any reason to believe that the magistrate judge had called the conference for anything other than normal discovery purposes. Under these circumstances, the trier of fact could not find beyond a reasonable doubt that Weinfeld did not in good faith pursue "a plausible though mistaken alternative." Accordingly, we hold that the government failed to present sufficient evidence that Weinfeld's failure to appear at the November 14 scheduling conference was willful.

■ The second incident occurred on January 24, 1991. More than a month earlier, the magistrate judge had issued an order directing Weinfeld's associate, Ellis Davison, who had appeared at the December 10 conference at which the magistrate judge made clear his purpose in ordering Weinfeld's appearance, to deliver a transcript of the December 10 proceedings to Weinfeld. The order also directed Weinfeld to appear at the January conference "or be certified in contempt of court." Thus, in contrast to the first incident, there was evidence that, by this time, Weinfeld was on notice that the magistrate judge wished to address him personally, and not a substitute, regarding his correspondence with opposing counsel, and that the magistrate judge was contemplating sanctions against him if he failed to appear. No pursuit of a plausible but mistaken alternative appears. Consequently, we conclude that the government presented sufficient evidence of willfulness to permit a retrial

---

**30.** The magistrate judge and the district judge agreed that Weinfeld's failure to appear at the December 10, 1990 conference was excused be- cause Weinfeld was on trial in another court that day.

regarding Weinfeld's failure to appear at the January hearing.

## V. THE SENTENCE

■■■■ Inasmuch as we must reverse and remand for further proceedings, we need not exercise our responsibility to review the onerous $5,000 fine imposed on Weinfeld.[31] For the guidance of the district court on remand, however, it is necessary to comment upon the revocation of Weinfeld's *pro hac vice* status.

In *Johnson v. Trueblood*, 629 F.2d 302 (3d Cir.1980) (per curiam), we held that when a district court contemplates revocation of an attorney's *pro hac vice* status, the attorney must receive, at a minimum, notice of the conduct placing his or her *pro hac vice* status at risk, notice of the standard the district court will apply in deciding whether to revoke that status, an opportunity to respond, and written reasons for any revocation. Id. at 303–04. In this case, Weinfeld did not even receive notice that his *pro hac vice* status was at risk before the district court revoked it.

In *Johnson*, the appellants also argued that the due process clause requires more than the minimal procedural protections we outlined, but we declined to address this difficult question because of the possibility that the procedures used on remand might satisfy the appellants. In light of the long-standing policy of avoiding unnecessary constitutional adjudication, *Ashwander v. Tennessee Valley Authority*, 297 U.S. 288, 345–48, 56 S.Ct. 466, 482–83, 80 L.Ed. 688 (1936) (Brandeis concurring), we will follow the same course in this case. We simply note that, should the district court be inclined to consider revocation of *pro hac vice* status as a sanction, the court must follow the proper procedures.[32]

## VI. CONCLUSION

We conclude that judicial officers are not required to pursue civil contempt sanctions before embarking upon a criminal contempt proceeding, and that a showing of obstruction of the administration of justice is required only when contempt is punished summarily. We also hold, however, that the district judge erred by relying upon the record of the proceeding before the magistrate judge instead of trying the charges against Weinfeld de novo. Having examined the sufficiency of the evidence, we conclude that the government presented sufficient evidence that one of Weinfeld's non-appearances was willful. Accordingly, we will reverse and remand for further proceedings consistent with this opinion.

---

**31.** When Congress has not imposed a statutory limit on a sentence for criminal contempt, the sentence may be reviewed, and if warranted, revised by an appellate court. *Green v. United States*, 356 U.S. 165, 188, 78 S.Ct. 632, 645, 2 L.Ed.2d 672 (1958); *United States v. Flynt*, 756 F.2d 1352, 1366 (7th Cir.1985); *United States v. Gracia*, 755 F.2d 984, 988–89, amended in *U.S. v. Flynt*, 764 F.2d 675 (2d Cir.1985); *United States v. Powers*, 629 F.2d 619, 624 (9th Cir.1980). In order to ensure that the contempt power is not abused, appellate courts have a "special responsibility" to review criminal contempt sentences. *Green*, 356 U.S. at 188, 78 S.Ct. at 645.

**32.** The issue may be mooted by the recent transfer of asbestos cases to the Eastern District of Pennsylvania for consolidated pretrial proceedings pursuant to 28 U.S.C. § 1407. See *In re Asbestos Products Liability Litigation (No VI)*, 771 F.Supp. 415 (Jud.Panel Multidist.Litig.1991).